## KLING *v.* SEJOUR et ux.

Where one who had purchased real estate in a State in which the common law prevails, with full warranty, is evicted in an action of ejectment instituted by a third person, and, without contesting the claim of the latter in the court of the last resort, purchases his claim before delivery of the premises by the sheriff to such third person, his recourse against his warrantors will not be thereby affected. The submission to the judgment by an attornment was no waiver of the right to prosecute the writ of error ; the rule that the voluntary execution of a judgment or decree is a waiver of, or bar to, an appeal or writ of error, has no place in the common law. Nor was the purchase from the plaintiff in ejectment a release at law of the errors in the judgment, nor could it be pleaded in bar of a writ of error prosecuted for the exclusive benefit of the purchaser.

By the common law one judgment in ejectment is no bar to another, and not being a decision on the mere right does not prejudice the proprietor in his assertion of it in a higher degree of action.

What constitutes title and what seizin, or, in the language of our law, the possession as owner of immovable property, must be determined by the law of the place where it is situated, and that is the only law which can determine whether a covenant of title and seizin has been broken or not.

A covenant of warranty, in an act of sale executed here, of land in another State, is a contract to be performed in that State, and what amounts to a fulfillment or breach of it must be determined by its laws.

To recover against a vendor of real estate on his covenant of warranty, under the laws of Mississippi, the purchaser who has been evicted by a judgment, in the absence of notice to the vendor of the former suit, must show that the recovery was by a title paramount to that conveyed to him.

Where a purchaser of land is evicted by a third person under a judgment in an action of ejectment, if his vendor defended the action himself or by an agent authorized to represent him in the matter, or if he had sufficient notice of the institution of the action so that he might have defended it, his covenant of warranty, by the law of Mississippi, is broken; otherwise the judgment will not be binding on him.

In an action against a vendor of real estate situated in another State on a covenant of war-

ranty in the act of sale executed here, founded on an eviction by a third person under a judgment rendered in that State, the notice of the institution of the action by such third person required to be given to the vendor in order to render the judgment conclusive as to the breach of warranty, must be such as the laws of that State require, and not such as would be necessary under our law had the land and action been in this State. The provisions of arts. 2493, 2494, C. C., which bind the vendor by a judgment of eviction against the purchaser even in the absence of a notification of the suit, unless the vendor show that he possessed proofs which would have sustained his title, and which, for want of such notice to him, have not been made available, does not apply to such a case.

APPEAL from a judgment of the Fifth District Court of New Orleans. *Buchanan*, J., in favor of the defendants. *Henderson* and *Roselius*, for the appellant. No counsel appeared for the defendants. The judgment of the court was pronounced by

EUSTIS, C. J. In 1843, the defendants, in the city of New Orleans, sold to the plaintiff a tract of land situated at the bay of St. Louis, in the State of Mississippi, including the establishment called the St. Louis Hotel, in consideration of the sum of $4,180, and delivered to him possession The sale was by authentic act, but in the form denominated, by the common law, a deed of bargain and sale, and contains a full warranty of title on the part of the vendor. The plaintiff alleges that, since he has taken possession of said land, a suit has been instituted against him in the Circuit Court of Hancock county, Mississippi, for the recovery of the possession, and that judgment was rendered against him for its possession. The suit it appears was an action of ejectment in the name of *John Doe*, on the demise of *John Henderson*, against *Richard Roe*, i. e. *Michael Kling*, and the plaintiff alleges that he was ejected and evicted from said land by said judgment. It is also stated that the defendant *Sejour* was cited in warranty, and actually defended the suit by his counsel. The action is based upon this judgment and eviction as a breach of the warranty, for the recovery of the purchase money, etc. The judgment of the District Court was against the plaintiff, and he has taken an appeal.

The judgment in ejectment against *Kling* was rendered, in April, 1845, and it appears that, on the 26th of September, the day before the delivery of possession by the sheriff to the plaintiff in ejectment, *Kling* bought out the title of *Henderson* under a general warranty. The district judge considered this contract between *Kling* and *Henderson* as inconsistent with *Kling's* recourse against his warrantors, *Séjour* and wife, which is sought to be established in this suit, and accordingly gave judgment for the defendants. We do not concur with the view taken of the rights of *Kling* as affected by purchasing *Henderson's* title. The land was in the State of Mississippi, the action of which complaint is made was brought there, and the rights of *Kling* must be determined by the laws of that State in which we assume the common law to prevail.

It was not necessary for *Kling* to contest the validity of *Henderson's* claim in the court of the last resort, in order to entitle him to his action on the covenants of the vendor. The judgment of the court of competent jurisdiction is presumed correct, whenever introduced collaterally in a court of the same State or another State. This is not affirming that it is proof against other parties, on a question of the right adjudged. That depends on facts which may or may not be in the record, the determination of which can only bind parties and privies, or quasi parties, who had opportunities to contest or avoid the facts alleged. It was equally unnecessary for him to suffer an actual eviction from the premises by the execution of the writ of *habere facias possessio-*

17

*nem.* He might have well attorned to the plaintiff after the judgment. The submission to the judgment by an attornment was no waiver of the right to prosecute a writ of error. The rule that the voluntary performance of a judgment or decree is a waiver or bar to an appeal or writ of error, has no place in the common law.

The purchase by *Kling* of the land from *Henderson*, the plaintiff, falls equally short of a release at law of the errors in the judgment. It could not be pleaded in bar of a writ of error, even a writ prosecuted for the exclusive benefit of *Kling*; and whatever effect this transaction might have against *Kling* in any contest between *Henderson* and himself, it is very clear it could not effect the rights of *Séjour*. If the judment is not now reversable, another ejectment, or a writ of right may be maintained, if the right be good. One judgment in ejectment is no bar to another, and not being a decision on the mere right does not prejudice the proprietor in his assertion of it in the higher grade of action.

This case then depends on the question, whether the defendants have kept or broken their covenants in the act of sale to the plaintiff, which are of seizin, good title and warranty. The covenants of good title and seizin of the premises are affirmation covenants of present existing facts, and in this case were broken the instant the act of sale was delivered, or they have been ever since kept and will ever remain unbroken.

It is plain that what constitutes the title and what the seizin, or, in the language of our law, the possession as owner of immovable property, is determined by the law of the place where it is situated; and, in as much as the breach of the undertaking or falsehood of the affirmation that the seller had just title, is the absence in him of what constitutes it, the law in force over the property is the only law which can be appealed to for the purpose of ascertaining whether the covenant has been broken or not. It is then by the law of Mississippi, that we must determine whether these covenants of good title and seizin have been kept or broken by the defendant. The covenant to defend the title or of a warranty, is an undertaking on the part of the grantor that he will defend the property against all lawful actions. This could only be done in the courts of Mississippi, and therefore this covenant is a contract to be performed in that State, and, by the express provisions of our Code as well as by the *jus gentium*, what amounts to its fulfillment or its breach must also be determined by the law of that State.

It has long been settled in this court that we will take judicial notice of the common law of Mississippi, and as we have found nothing in the statutes the parties have by their consent admitted might be read here, nor in the depositions or admissions of the parties in the District Court, which varies the rule of that law applicable to this case, we proceed upon our own knowledge of the law, which governs the whole case, without adverting to any evidence or admission of it in the record.

We have acted on the supposition that the plaintiff has in his proceedings sufficiently assigned breaches in all the covenants. This certainly would not be the case were this an action of covenant broken in a common law court, but the forms of proceedings in courts are governed by the law of the forum, and this petition must be tested by our Code of Practice. This petition is certainly not very clear, and it is not very certain of what the plaintiff intended to complain, but according to the best construction of its language it amounts only to an allegation that the property when purchased by him was encumbered by what

we would denominate a mortgage; and, an action of ejectment having been brought upon such claim and a judgment recovered, he had been thereby evicted. It is not alleged that the defendant was not seized of the land, nor in possession of it as owner, nor that he had no title to it, nor that his title was defective, otherwise than that his *estate* in it was *burthened* by the payment of some debt; and when the documents which he exhibits and his evidence are examined, it is found that he only proposed to establish that the property had been encumbered by a debt owing by the former owner of it from whom the defendant purchased it, and that by certain judicial proceedings which had been had subsequent to his purchase of the property it had been subjected to the payment of this debt, and for this purpose had been sold, and that the purchaser had recovered it of him, the plaintiff. These are not such allegations as amount to an assignment of a breach of the covenant of seizin and good title, whereby the covenantor would have been required in his defence to prove his seizin by sure and indefeasible title ; and the case must be considered as the plaintiff has presented it. In this view of the case it appears that the plaintiff proposed to establish that one *St. Martin*, being in the possession of the land, was, at the time of his sale of it, indebted to the Commercial Bank of Natchez, and that this debt, or the judgment afterwards recovered on it, was a lien upon the property, and on this judgment an execution having issued the property was sold, and *John Henderson* having become the purchaser brought his action of ejectment, and having recovered, he, the plaintiff was compelled to purchase off the encumbrance from him. In this state of the case it is obvious that the plaintiff did not propose to question the validity of the title of *St. Martin*, he only proposed to show that his estate in the land was burthened with the debt, and in such a manner that the creditor had the right to subject it to sale for the purpose of having the money made, notwithstanding his sale to the defendant. The plaintiff endeavored to establish that it was sold as the property of *St. Martin*, the sheriff having conveyed the title of *St. Martin* to *Henderson*, and, on this title so acquired, the plaintiff insisted that *Henderson* had recovered in the action of ejectment. In this state of the case it is very plain that the defendant was not called upon to prove title in *St. Martin*; it was sufficient for him to deduce title from *St. Martin*. This he did by giving in evidence the deed of conveyance of *St. Martin* to himself. The burthen of the proof that *Henderson* had acquired a superior title from *St. Martin*, was thereby cast upon the plaintiff, and, unless he has established it, the issue on this supposed breach of these covenants of seizin and good title must be found for the defendant.

In order to deduce title from *St. Martin* to *Henderson*, and thereby prove the defendant had not title from him, the judgment of the bank against *St. Martin*, the execution and sheriff's return, and the deed of conveyance to *Henderson*, ought to have been all produced in evidence on this trial. On these documents, had they been given in evidence, the statute of Mississippi may have established a lien or priority which might have proved *Henderson's* the better title ; but no such proofs were offered, nor any other which deserve to be even stated. But it is not necessary to pursue further this matter. The case does not appear in fact to have been prepared with a view to the recovery for a breach of either of these covenants.

The plaintiff mainly relied on the alleged breach of the covenant of warranty, and insisted that this has been broken by the judgment recovered against him in the action of ejectment by *Henderson*. If he prevail on this ground, he

KLING
v.
SEJOUR.

must show one or the other of these two facts : 1st. That the recovery was by title paramount to that which was conveyed him by the defendant; or, 2dly, That the defendant had notice of that action given to him, or his agent having the faculty of representing the defendant in the matter.

The first ground has already been disposed of, in the decision that it is not shown in this cause that *Henderson* had any title. It is not necessary to stop to prove that this is indispensable to a recovery, in the absence of notice of the former suit. The common law is unquestionable in this respect, and the deposition read by the plaintiff to prove what was the law in Mississippi, shows that the rule has not been altered in that State. The deponent says, a party evicted by a *superior title* of any sort from the possession of real estate which has been previously purchased with covenants of warranty, has a right to recover against his vendor, etc.

In respect to the second ground, we infer it to be the settled law in Mississippi that, if the defendant did defend the action by himself, or agent with sufficient authority to represent him in the matter, or if he had sufficient notice of the institution of the action, so that he might have defended the land by resisting its recovery, his covenant to warrant, or in other words to defend the land, was broken.

The question then is, did the defendant appear in the action of ejectment, or had he notice of its commencement in time to enable him to defend the land according to his covenant ? It will not be necessary to separate these questions, for it will be found that if it appear that he had notice of the action it may be fairly inferred that he did appear by his authorized attorney and defend it, and if he did defend there is no occasion to make any enquiry in respect to the notice he had received of the institution of the action.

It is necessary, in the investigation of this matter, to recur to the evidence, and attend particularly to dates, and observe what existed and what does not appear to have occurred, at each stage of the history of the affair.

The defendant *Séjour* was a resident of New Orleans in 1841, and up to 1843, and it does not appear he ever resided elsewhere in the United States. On the 8th of April, 1841, he purchased this property on the bay of St. Louis of *Charles St. Martin*, at the price of $6080—a debt owing him by *St. Martin*, and received his absolute deed of conveyance therefor, with covenants of seizin, good title and warranty, against all claim whatsoever, and having accordingly received possession he continued to hold it until his sale to the plaintiff. This possession was by his tenants, for it is admitted that he never resided at the bay of St. Louis. It does not appear that *Séjour* was in anywise disturbed in his possession, or had any reason to doubt the sufficiency of his title, or to apprehend that the property was subject to any encumbrance whatever.

On the 4th of February, 1843, *Séjour* sold and conveyed the property to the plaintiff, *Kling*. It was then a hotel, and, having been leased by *Séjour* to a tenant in possession, the sale was made subject to the term, which continued until the first day of the succeeding June. *Kling* was by the conveyance substituted to all the rights of *Séjour* as lessor, and obtained the seizin. On the 1st of May, 1843, just three months after his sale to the plaintiff, *Séjour* left the United States (for France, it is understood, for it appears he returned from France,) and did not return until 1847, which was after the judgment in ejectment had been recovered against *Kling*, and indeed after this suit had been commenced. There is no reason to suppose that *Séjour*, at that time, did apprehend that this property was subject to any encumbrance, or that there was

any defect in the title, and therefore it cannot be presumed that he appointed any agent to receive notice from *Kling* of the institution of any suit against him in respect to the property. It is admitted that *R. S. Séjour*, a son of the defendant, attended to the collection of his rents, and it may be inferred that he had been appointed by the defendant for this office; but it cannot be inferred from this fact that the son had been appointed agent to receive notice of the institution of a suit against *Kling* for the recovery of property in respect to which it was not expected any controversy would arise, and there is no evidence that the son had any general commission to represent or personate his father in all things, and certainly such an universal commission cannot be inferred from the mere relation of father and son.

It does not appear that there was any ground to apprehend that any adverse claim existed or would be brought up against the property, until October, 1843. The sheriff, about this time, it is said, levied an execution upon it, and *R. S. Séjour*, the son, visited, from New Orleans it is understood, the bay of St. Louis, and employed counsel in conjunction with the counsel of *Kling* to assist in the defence of the suit, which it was expected would be instituted by whoever might become the purchaser of the property; and the counsel so employed did assist in the defence of the suit in consequence of this employment. Now, was this employment by the authority of the defendant? or, shall it be taken *primâ facie* that it was by his authority, so that the defendant must prove the negative? It has already appeared that it cannot be presumed that the defendant had left with his son a commission to represent him in any such unexpected affair, and there is no evidence whatever of any notice or information given him of any such seizure or sale, or action of ejectment by the purchaser. The plaintiff called upon the defendant to produce and file the letters it was alleged he had written to the defendant, giving such notice. Defendant answered on oath in open court that he had never received any such letters, and had no knowledge of his son's having received any, and the plaintiff offered no proof of any such. Our own views on this subject have been recently given in the case of *Fuselier v. Robin, ante* p. 61.

It only remains to ascertain whether the appearing in court of the lawyer who was employed by the son made the father a party to the proceedings, or in any otherwise has the effect of rendering the judgment which was recovered either *conclusive*, or *primâ facie,* evidence against the defendant, that the recovery was had on superior title.

The employment of *Mr. Lampkin*, by the son of *Séjour*, as the assistant of the counsel of *Kling*, the defendant to the action, did not make *Séjour* a party on the record. *Kling* only was admitted defendant to the suit in the place of the casual ejector. If *Séjour* had been also admitted defendant then he would have been a party, and the question would have occurred whether the judgment would have been effectual against *L. Séjour*—whether the attorney had authority to represent him in court or not. There are cases in which it has been determined that the judgment in such cases does constitute *res judicata,* and that the party so represented cannot show that the attorney had no authority, but those are cases in which the persons resisting the effect of such proceedings were made a party on the record. This is not such a case. *Séjour,* the father, was not made a party, there was no judgment against him, and the effect of the counsel employed by the son appearing in the cause and arguing it, depends entirely upon the authority by which he appeared. It is impossible to hold the defendant bound by either the notice of the action of ejectment to his

son, or his employment of the counsel to represent defendant, without assuming and establishing the broad proposition that any son may act for his father in any matter whatsoever in his absence, which may unexpectedly arise; and, unless the authority of the son is so established, the authority of the attorney cannot be maintained, without establishing the proposition that any attorney may appear in any cause without our authority and without making us even a party on the record, and bind us by all the proceedings had in the cause.

There is nothing then in the fact that *Mr. Lampkin* did appear in the defence of the action of ejectment; the defendant was not *Séjour* the defendant in the present action, but *Kling* the plaintiff here, and according to the record he appeared for *Kling* only. It is established that he appeared on the employment of *R. L. Séjour* and was paid by him, but there is no evidence that *R. L. Séjour* employed him in the name of his father, *L. Séjour*, and much less that he had any authority so to employ him; and, in the absence of all proof that *L. Séjour* had notice of such a suit, or even an apprehension that such a one, or any other in respect to the land, would ever be instituted, it cannot be presumed he had authority.

Thus far we have spoken of the supposed notice to *L. Séjour*, without inquiring what notice would have been sufficient, and have treated the matter as if any information that such a suit existed would have been sufficient. But we understand the law of Mississippi to require much more to bind a party by a judgment.

It is true there is enough in the circumstances of the case to raise a plausible conjecture that the defendant had this notice, and that the employment of the counsel was by his authority, but conjecture is far from being sufficient in such a matter. The notice, it must be observed, if given, is in the nature of a judicial process, and has the effect, if established, to constitute the judgment *res judicata*, and would preclude the defendant in this action from controverting that the plaintiff in that had good title, and surely no such effect could be given to a judgment against one who is no party to the record by any such conjecture. It is not necessary to show that in common law proceedings the service on the person in such cases is required, or that it must be by some means shown that the notice came to the party. Those courts never act on such conjectures as would be necessary to be resorted to in this case for the purpose of binding a party by a judgment: and the notice to have effect in this suit must be such as the laws of Mississippi for such purposes required, and not such as we might require had the land and suit been in this State.

There is no competent evidence that the defendant in this suit had any notice whatever of the action of ejectment—no proof that it was defended by his authority; and there being no evidence that the judgment was recovered by a superior title, or that the plaintiff in that action had any title to the property, the plaintiff cannot recover in this action.

It is to be observed that, we have considered the rights of the parties in this suit as existing under a jurisprudence foreign to our own.

The provision of the Code, arts. 2493, 2494, which binds the vendor by a judgment of eviction against the purchaser even in the absence of a notification of the suit, unless the vendor shows that he possessed proofs which would have maintained his title, and which, for want of notification of the suit to him, have not been made available, has no application to this case. The judgment referred to is a judgment in a petitory action, which is conclusive as to the rights of the parties. An action of ejectment is for the recovery of land, but a judg-

ment in it is not conclusive as to the right. The action may be renewed by either party, or the right may be again tested in an action of another form. At all events, any inquiry as to the application of our laws to this case would be entirely superfluous.

It only remains for us to state that the cause of the delay in the preparation of this opinion and also of its unusual length, is to be found in the fact that the case has been submitted to us *ex parte*, without any argument or note on behalf of the defendants, notwithstanding the elaborate briefs presented by the counsel for the plaintiff, in addition to the full argument at bar. We have been compelled to examine all the points which the case presents, instead of confining ourselves to those to which an argument on the part of the defendant might have limited us.

The judgment of the District Court is, therefore, annulled, and judgment rendered against the plaintiff as in case of non-suit, with costs in the District Court ; the defendant paying the costs of this appeal.