Bagley v. Fletcher.

---

BAGLEY v. FLETCHER.

|  |  |
| --- | --- |
| 44 | 153 |
| 186 | 398 |

|  |  |
| --- | --- |
| 44 | 153 |
| ſ90 | 3 52 |
| ſ90 | 367 |

1.  INFANT: *May avoid deed after maturity.*

A deed executed by an infant may be avoided by him after maturity, by any act unequivocally manifesting an intention to avoid it; and a reconveyance to another not in privity with the first grantee, is conclusive evidence of such intention, and disaffirms the first deed; and this, whether the last be a quit-claim deed or a deed with covenants of warranty. (Eakin, Justice, dissenting as to the conclusive effect of a quit-claim deed; holding that it should depend on intention to be ascertained from the circumstances and nature of the second deed.)

2. SAME: *Same.*

The principle that the deed of an infant may be avoided by his deed of the same property after maturity to another party, is confined to absolute deeds inconsistent with one another, whereby it becomes manifest that it was the intention of the party to disaffirm the first deed.

3. SAME: *Same: Ratification: Temporary acquiescence.*

The mere fact that one for a few months after maturity recognizes a deed made in infancy as an existing fact, and acquiesces in it, and takes no active step to disaffirm it, will not amount to a ratification of it.

4. DEEDS: *Quit claim: Effect of.*

In this country a quit-claim deed is a substantive mode of conveyance, and is as effectual to carry all the right, title, interest, claim and estate of the grantor as a deed with full covenants; although the grantee has no possession of, or prior interest in the land. Covenants in a deed are no part of the conveyance. They are separate contracts, and the title passes independently of them.

5. INFANT: *His deed: Covenants in.*

The deed of an infant will pass his estate subject to disaffirmance after his maturity; but the covenants in his deed are absolutely void.

6. HUSBAND AND WIFE: *Effect of wife's conveyance of her land.*

Whatever interest the husband acquires in his wife's lands by marriage since the Constitution of 1874, is swept away by her subsequent conveyance of them; and so where a husband and wife during her infancy joined in a conveyance of her land, and after her maturity she disaffirmed and avoided the conveyance by conveying to another party, *held*, that the last conveyance swept from the first purchaser as well the husband's interest as the wife's.

APPEAL from *Saline* Circuit Court in Chancery.
Hon. J. M. SMITH, Circuit Judge.

*Paul Bagley*, pro se.

A purchaser by quit-claim deed is not entitled to protection as an innocent purchaser for value without notice; he takes only what the vendor can lawfully convey. (*3 How.*, *333; 12 Wall., 323; 34 Texas, 441; 18 Minn., 405.*) Fletcher's deed was a mere *release*, and the Rowlands had noth-

ing to release.   Appellee purchased with full notice of appellant's title, *actual* notice, and it matters not whether his deed was recorded or not.   The deed was good whether acknowledged *at all* or not, as under our laws married women can convey as *femmes sole*.   (*Art. 9, sec. 7, Const.*) Appellant at least took all the interest of the husband in the land, *i. e.*, his marital rights, an estate for life and curtesy, etc.

*John Fletcher* for appellee.

At the time Mrs. Rowland conveyed to Bagley she was a minor, and she had a right to avoid the deed, which she did when she conveyed to Fletcher.   *Harrod v. Meyers, 21 Ark., 592–600; Watson v. Billings, 38 Ib., 278.*

SMITH, J.   Bagley filed this bill to quiet his title to a quarter section of land which he had acquired by purchase from Mrs. Rowland and her husband.   The deed to Bagley is in the form of a bargain and sale, containing no covenants, however, except that the grantor was the owner of the land by virtue of a donation deed to her, as a married woman, by the State, and that she had never alienated or incumbered it.   The bill stated that about eighteen months after the plaintiff had procured his title, the Rowlands, husband and wife, had conveyed the land by quit-claim to the defendant.   And this was the cloud that was sought to be removed.

The answer set up that Mrs. Rowland was, at the date of the execution of her first deed, an infant.   And the proofs showing that she was at that time only about seventeen years old, and that in six or seven months after attaining her majority she sold and conveyed the land to Fletcher, the Circuit Court dismissed the bill.

At the date of both conveyances the land was wild and

Bagley v. Fletcher.

unoccupied, and, as we may infer, of but little value. The consideration expressed in Bagley's deed is $50. And this sum was made up of $3 in cash, $3.70 in taxes refunded to Mrs. Rowland and the remainder was the estimated value of Bagley's services in looking up the title to the land and procuring the donation to Mrs. Rowland. Fletcher paid $25 for his quit-claim, and he was advised that Mrs. Rowland had previously conveyed the land to Bagley. But he expressed his willingness to take his chances for getting the land and to protect Mrs. Rowland against all risks she might run by a second conveyance.

1. INFANT: May avoid deed after maturity. Mrs. Rowland's deed to Bagley, having been made during her non-age, was voidable at her election. There were several ways in which she might avoid it; as, by entering on the land and taking possession of it; or by bringing ejectment for it against any one in possession (*Watson v. Billings, 38 Ark., 278; Lessee of Drake v. Ramsay, 5 Ohio, 152*); or by filing a bill to cancel the deed on account of her infancy, as was done in *Harrod v. Myers, 21 Ark., 592*, or by a re-sale to another after majority; or by any other act unequivocally manifesting an intention to avoid. All that was required was some positive and decided act of dissent adverse to the original act.

Now, there can not be a more decisive act of disaffirmance than the conveyance of the same land to another person, who is not in privity with the first grantee. It is conclusive evidence that the grantor does not intend to be bound by the deed made in infancy. *1 Am. Lead. Cas., 5th ed., 317; Cressinger v. Welch, 15 Ohio, 156; Jackson v. Carpenter, 11 John., 539; Jackson v. Burchin, 14 Ib., 124; Harris v. Cannon, 6 Ga., 382.*

The earliest case on this subject that we have examined is *Frost v. Wolverton, 1 Strange, 94.* An infant covenanted to levy a fine by a certain time to certain uses. He levied

Bagley v. Fletcher.

the fine; but by another deed made at full age, he declared it be to other uses. And the court held that the last deed should be the one to lead the uses.

The deed to Bagley vested in him a defeasible estate in fee; but his title was defeated by the subsequent conveyance to Fletcher, which was a revocation of the former grant. The effect of this last-mentioned instrument was to render Bagley's deed as though it had never been; to extinguish any interest in law or equity that Bagley may have acquired under it, and to entitle Fletcher to hold the land free from any equity of Bagley. *Norcum v. Sheahan,* *21 Mo., 25; Mustard v. Woolford's Heirs, 15 Grattan, 329.*

The principle of one deed being avoided by another deed for the same property after age, must be understood of absolute deeds inconsistent with one another, whereby it becomes manifest that it was the intention of the party to disaffirm the former deed. Thus, in *Watkins v. Wassell,* *15 Ark., 73,* a minor executed a deed of conveyance of real estate, and, upon arriving at age, jointly with his grantee, executed a mortgage upon the same premises to secure a debt of the grantee. This was held to be an affirmance of the previous conveyance, being done in conjunction with the grantee, at his instance, and for his benefit. But the court say that if he had executed the mortgage alone, this would have amounted to a disaffirmance, for that would have implied that he still considered himself the owner.

2. SAME: To disaffirm the deeds must be inconsistent.

So a mortgage of lands during infancy is not avoided by a second mortgage of the same lands after full age. For the mortgagor still retains the equity of redemption, and a party may place several successive incumbrances upon the same property. Therefore the execution of the second mortgage does not necessarily indicate an intention to avoid the previous one. *McGan v. Marshall, 7 Humphreys, 121.*

In *Bozman v. Browning, 31 Ark., 364,* an infant whose domicile was in Alabama sold his lands in Arkansas to his brother. He died soon after attaining his majority, and by will devised all of his property, both real and personal, to his father for life, with remainders over. At the time of his death he owned land in Alabama. And the court confined the operation of the devise to that land; though it intimated that if he had expressly devised the Arkansas lands, it would have been a disaffirmance.

In *Eagle Fire Co. v. Lent, 6 Paige, 635,* an infant conveyed real estate to a party, who first mortgaged it to one person and then conveyed the premises in fee to another, subject to the mortgage. The last-mentioned grantee procured a quit-claim deed from the infant, who was now of age, and on bill filed to foreclose the mortgage, undertook to over-reach the mortgage, by claiming that the deed to him was a disaffirmance of the deed to the mortgagor, the original grantee of the infant. But the Chancellor held that the last deed was intended to operate as a mere confirmation of the former title, and not as a disaffirmance; and then laid down the rule that "to render a subsequent conveyance by an infant an act of dissent to his prior deed, it must be inconsistent therewith, so that both can not properly stand together."

Subject to this qualification, the rule is a cast-iron one that a re-sale after majority avoids the sale before. The law conclusively presumes that Mrs. Rowland meant something by executing the second deed. And yet, if she intended the previous deed to stand, she could not have intended anything. There is no pretense of any ratification of the deed to Bagley. Indeed, ever since that deed was made, she has been under such disabilities that no binding ratification could be made except by deed.

It will not do to say that, because Mrs. Rowland recog- **3. RATIFICATION.** nized the previous conveyance to Bagley as an existing **Temporary acquiescence.** fact, and acquiesced in it for a few months after coming of age, so that she took no active step to disaffirm it, amounts to a ratification. This point was fully considered in *Tucker v. Moreland, 10 Peters, 59.* The Circuit Court had been requested in that case to charge that "if the jury shall believe, from the evidence, that said Richard was under age at the time of the execution of said deed; that he, after his arrival at age, voluntarily and deliberately recognized the same as an actual conveyance of his right, or during a period of several months acquiesced in the same without objection, then the said deed can not now be impeached on account of the minority of the grantor."

The prayer was rejected, and Mr. Justice Story, in delivering the opinion of the court, says: "The instruction is objectionable on several accounts. In the first place it assumes as a matter of law that a voluntary and deliberate recognition by a person after his arrival at age, of an actual conveyance of his right during his nonage, amounts to a confirmation of such conveyance. In the next place that mere acquiescence in the same conveyance, without objection, for several months after his arrival at age, is also a confirmation of it. In our judgment neither proposition is maintainable. The mere recognition of the fact that such a conveyance has been made, is not, *per se*, proof of a confirmation of it.  *   *   * Admitting that acts *in pais* may amount to a confirmation of a deed, still  *   *   *  these acts should be of such a solemn and unequivocal nature as to establish a clear intention to confirm the deed, after a full knowledge that it was voidable. A *fortiori*, mere acquiescence, uncoupled with any acts demonstrative of any

Bagley v. Fletcher.

attempt to confirm it, would be insufficient for the purpose."

4. DEEDS: Quit-claim: Effect of.

Nor can any solid distinction, grounded on the form of Mrs. Rowland's deed to Fletcher, be taken as to the efficacy of that deed, considered as an act of disaffirmance. In England we understand the law to be that a deed of release can never operate technically as a conveyance *per se*, but only by way of enlargement of a previous estate. Consequently if the releasee was not in possession and had not some other interest in the land, he had no estate to be enlarged. But in this country a quit-claim deed is a substantive mode of conveyance, and is as effectual to carry all the right, title, interest, claim and estate of the grantor, as a deed with full covenants, although the grantee has no possession of or prior interest in the land. It is almost the only mode in practice where the vendor does not wish to warrant the title. See article on the nature and effect of a quit-claim deed, in *12 Cent. Law Jour., 127*, and cases cited; among others, *Brown v. Jackson, 3 Wheaton, 448; Kyle v. Kavanaugh, 103 Mass., 359; Pray v. Pierce, 7 Mass., 381; Jackson v. Fish, 10 Johns., 456; Hall v. Ashby, 9 Ohio, 96.*

Covenants no part of deed.

In fact, the covenants in a deed constitute no part of the conveyance, but are separate contracts. The title passes independently of them.

To say, then, that an infant can not disaffirm a previous contract of sale by executing a quit-claim deed after he comes of age, is equivalent to saying that he cannot disaffirm except on condition of warranting the title of the second grantee. None of the text-books or cases that we have consulted mention any such exception to the general rule, and we are unwilling to take so novel a position.

Bearing in mind that Mrs. Rowland was, at the date of the execution of the first deed, an infant and a married woman, and that she was not bound by the covenants contained in her deed (*1 Bishop on Married Women, sec. 603; Benton County v. Rutherford, 33 Ark., 640*), the two deeds were not essentially dissimilar. By the first the estate simply flowed from her, provided she did no act to defeat it after full age. But her covenants of seizin and against incumbrances were void.

5. INFANT'S DEED: Covenants in void.

In *Harrod v. Myers, 21 Ark., 592*, this court decided that where a husband and his infant wife unite in a conveyance of the wife's land, although she may avoid it so far as it affects her interest and that of her heirs, yet it is good to carry the husband's interest during their joint lives; that is, his right to the possession and to take the rents and profits, and his rights by curtesy if he survives her. And this decision was correct as the law then stood. But under our present Constitution and married woman's law, and the construction that has been placed upon them, whatever interest Rowland acquired in the land by marriage was swept away by his wife's subsequent conveyance. *Constitution of 1874, art. 9, sec. 7; Roberts v. Wilcoxson, 36 Ark., 355; Milwee v. Milwee, ante, 112.*

6. HUSBAND AND WIFE: Effect of her deed.

Decree affirmed.

Mr. Chief Justice' COCKRILL concurred.

EAKIN, J., dissenting. When Fletcher took from Mrs. Rowland his quit-claim deed, he was in negotiation with Bagley for the purchase of the land. When his agent proposed to buy of her, she told him she had sold to Bagley, and expressed no dissatisfaction with the sale. The agent told her that Fletcher only desired her quit claim, and would take the risk and save her harmless. She then executed it for twenty-five dollars.

I do not concur in the opinion of the court in holding this a disaffirmance. The only sound principle upon which it has been held that the deed of an infant, executed after maturity, is a disaffirmance of a former deed of the same lands, made during infancy, to another grantee, is this: that by the second deed the grantor assumes to have title remaining in him, which is incompatible with the idea that he is willing to affirm the preceding conveyance. The second deed is held to be a disaffirmance by implication, because it can not consist with any other intention — not a direct disaffirmance by force of its terms. This is manifest from the application of the rule at common law, and still, in those States where alienations of lands adversely held are not permissible. There, if the infant is not in possession, the disaffirmance must be by entry or something equivalent, which is the operative act. The quondam infant, being then reclothed with his estate, may convey. In other States, as here, where lands adversely held may be transferred by the owners, the entry is dispensed with as an overt and solemn act of disaffirmance, and the deed if incompatible with any supposed recognition of the outstanding title, is taken as a manifestation of an intention to do what would, under the common law, have been actually necessary. It doubtless *is* the general rule that in this State and others where lands not in possession may be conveyed, a deed after maturity operates as a disaffirmance of one made to another person during minority.

But this manifestation of intention being, as I think, the foundation of the rule, it should not be carried beyond where the reason ceases — and, consequently, not to all such conveyances as, by their nature and circumstances, come short of showing such intention to disaffirm. This qualification of the rule has been recognized and applied

by a number of the most respectable authorities, including this court, where subsequent deeds have been held *not* to amount to such disaffirmance. Although, in each of the cases, circumstances were different, yet the same key-note pervades all, and the same qualification of the general rule is marked. It is this: that the conveyance after maturity will not be a disaffirmance if it is compatible with any reasonable supposition that the grantor did not intend to recall the former right. This was the express ground of the decisions in *Watkins & Trapnall v. Wassell, 15 Ark., 73,* and in *Bozeman v. Browning, 31 Ib., 364.* True, those cases are not in point as to facts, but they exemplify the principle. So, also, in the Missouri case of *Leitendorfer v. Hempstead, 18 Mo., 269,* there is a very strong recognition of it. And in *McGann v. Marshall, 7 Humph., 121,* it is clearly announced that the well-settled rule of disaffirmance by a deed, after full age, must be understood of absolute deeds, inconsistent with each other, *thereby* making it manifest that it was the *intention* of the party to disaffirm the first deed. That is a strong case. An infant had made a mortgage, and after full age he executed an absolute deed of trust of the same property to another person, without any reference to the mortgage. One would think that a tolerably clear manifestation of an intention to disregard the mortgage and give the trustee the full control of the property. It was in the grantor's power to do so. Yet it was held not to be clear enough, and that the trustee took only the equity of redemption.

I think, therefore, the question now in judgment can not be decided by the application of any cast-iron rule to the two simple facts, that Mrs. Rowland, as an infant, sold to Bagley, and then, as an adult, conveyed the same lands by quit claim to Fletcher. We must look deeper, and consider the circumstances of Fletcher's purchase

and the nature of his conveyance, and find its solution in determining whether or not the quit claim to Fletcher is so wholly incompatible with the former sale to Bagley as to clearly manifest an intention on Mrs. Rowland's part to disaffirm Bagley's title.

It was effective to pass only the title Mrs. Rowland then had. (*Witter v. Briscoe et al., 13 Ark., 426.*) It charged Fletcher with full notice of all imperfections of the vendor's title and all equities against it, inasmuch as he did not pay full price for the land as the evidence plainly shows. (*Miller v. Fraley et al., 23 Ark., 735.*) It did not serve the ordinary purpose of a good and sufficient conveyance. *Watkins v. Rogers, 21 Ark., 298.*

It is not necessary that such deeds should have anything to operate on in order to make them sufficiently desirable to be worth getting at some trouble and expense. They do not imply, necessarily, that the grantor has any title. Operating innocently as to all other claimants, they only estop him. They quiet apprehensions and fortify against defects and irregularities, or lost instruments or lack of registration. They are frequently given and taken for peace. They can not be incompatible with any former alienations. It is common in some of the States to announce the general rule to be that a deed *with covenants of warranty* will be a disaffirmance of a conveyance made in infancy. That idea enters into the leading case on the general rule. (*Tucker v. Moreland, 10 Peters, 58*) Mr. Justice Story, speaking of the deed made after full age, says: "The deed to Mrs. Moreland contains a conveyance of the very land in controversy, with a warranty of the title against all persons claiming under him, and a covenant that he had a good right and title to convey the same, and *therefore* is a positive disaffirmance of the former deed."

After a rather industrious search and inquiry, I have been unable to find a single case in which it has been held that a quit-claim deed, by its own force, will avoid a conveyance made in infancy. The opinion of the court seems to make it conclusively a disaffirmance. I think it should depend on intention, to be ascertained from the circumstances and nature of the second deed. It is enough for the protection of infants that they are *allowed* after age to disaffirm their conveyances. They are not bound to do so, and I fear it will work injustice to make their acts have that effect, when they may not have intended it. In this case, I do not clearly see that Mrs. Rowland did so intend.