## BEAUCHAMP *v.* BERTIG.

### Opinion delivered April 26, 1909.

1. FOREIGN JUDGMENT—CONCLUSIVENESS.—The provision of the Constitution of the United States (art. IV, § 1) that "full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State," contemplates that the record of a judgment rendered after due notice in one State shall be conclusive evidence in the courts of another State of the matter adjudged, but does not affect the jurisdiction either of the court in which the judgment was rendered or of the court in which it is offered in evidence. (Page 359.)

2. SAME—WHEN NOT CONCLUSIVE.—While the courts of one State generally enforce the laws of another as to contracts and other transactions therein between private individuals, this rule cannot be invoked where the enforcement of the foreign law would contravene some established policy of the State of the forum, nor where the question relates to the transfer of the title to real property. (Page 361.)

3. INFANCY—RIGHT TO DISAFFIRM DEED.—An infant's deed conveys title to his real estate, subject to his right to disaffirm when he becomes of age. (Page 362.)

4. SAME—BINDING FORCE OF COVENANTS.—Since an infant has the right to disaffirm his deed on reaching majority, it would be incompatible with such holding to say that he could enter into covenants in the deed that would defeat such right. (Page 362.)

5. COVENANTS—LAW GOVERNING.—While personal covenants, such as covenants of seisin, of right to convey and against incumbrances are governed by the law of the place of contract, covenants that run with the land, as covenants of warranty and for quiet enjoyment, as well

as covenants that can only be performed where the land lies, such as to defend title, to pay taxes and to repair, are governed by the law of the place where the land is situated. (Page 363.)

6. INFANCY—EFFECT OF FOREIGN JUDGMENT REMOVING DISABILITIES.—Although the disabilities of a minor who resided in a Territory had been removed by a court of his domicil, this will not affect his right to disaffirm a deed executed there and conveying land in this State in which his disabilities have not been removed. (Page 366.)

7. SAME—DISAFFIRMANCE OF DEED.—Where one who has conveyed land while an infant executes a deed conveying the property to another person after his arrival at majority, the first deed is thereby disaffirmed, although the first grantee is still in possession of the land. (Page 366.)

8. MERGER—WHEN DOCTRINE INAPPLICABLE.—The doctrine that where a greater and less estate meet in the same person the less is merged in the greater has no application where the same person acquired a dower interest in certain land and purchased the fee from minor heirs, which conveyance the heirs subsequently disaffirmed. (Page 368.)

9. INFANCY—DISAFFIRMANCE OF DEED—CONDITION.—A minor's deed can not be disaffirmed and the land recovered without repaying to the grantee sums paid by him in discharging debts which constituted a charge on such land. (Page 369.)

10. SAME—DISAFFIRMANCE OF DEED—REIMBURSEMENT OF GRANTEE.—Where a minor's deed is disaffirmed, and the land sought to be recovered, the grantee therein is not entitled to be reimbursed for a sum paid by him to his own agent for making the negotiations which led up to the execution of such deed. (Page 369.)

11. LANDLORD AND TENANT—RIGHT TO REMOVE IMPROVEMENTS.—Where, by the terms of a lease, the lessee is entitled to remove his improvements, such improvements are not part of the freehold, but are chattels belonging to the lessee. (Page 370.)

12. GUARDIAN AND WARD—EXTENT OF POWER TO LEASE WARD'S LAND.—Under the statutes authorizing a guardian to lease his ward's lands (Kirby's Digest, § § 3789-91, 3801-3), a guardian, under the directions of the probate court, may lease his ward's land for a term of years to continue beyond the minority of the ward. (Page 370.)

13. INFANCY—DISAFFIRMANCE OF DEED—RENTS.—Where a minor executes a deed in disaffirmance of a prior conveyance, the grantee in the later deed is entitled to rents only from the date of the deed of disaffirmance, with six per cent. interest until paid. (Page 371.)

Appeal from Greene Chancery Court; *Edward D. Robertson,* Chancellor; reversed.

STATEMENT BY THE COURT.

In 1885 H. H. Sitterding, Sr., died, owning and occupying a certain lot in the town of Paragould, Greene County, Arkansas. He left a widow and two minor sons, George and Herman. The widow intermarried with one Thomas, and soon afterwards moved to Oklahoma, taking her son George with her. Herman was sent to live with relatives in Indiana. On the 23d of January, 1892, the present guardian and curator of George and Herman, under orders of the probate court, leased the lot in controversy to appellees for a period of eleven years, for the sum of $300 per year. Under the terms of the lease, all the improvements made on the lot by appellees would remain personal property, and when the lease expired appellees were given the privilege of removing same. The appellees took possession under the lease and erected on the leased lot, and on another lot adjoining which they owned, a two-story brick business house at an expense of between nine and ten thousand dollars.

On the 28th day of August, 1899, under the orders of the probate court, the guardian and curator executed another lease on the lot mentioned to appellees for a period of ten years, upon substantially the same terms as the former lease. Under the last lease, appellees were given six months from the expiration of the lease to sell or remove the improvements made thereon, and during such time they were to pay rent at the rate of $25 per month.

On the 3d day of May, 1904, the district court of the Territory of Oklahoma rendered a judgment removing the disabilities of nonage of George and Herman Sitterding, specifically authorizing them to sell the lot mentioned above, which is described in the judgment. On the 5th day of May, 1904, a deed was executed by Emma Thomas (formerly Sitterding), George Sitterding and Herman Sitterding in which, for the consideration of $3,000, they did "grant, bargain, sell and convey" unto Bertig Brothers (appellees) the lot, describing it, and covenanted with them to forever warrant and defend the title against all lawful claims. The deed was duly recorded in Greene County on June 6, 1904.

George Sitterding came of age July 30, 1905 Herman reached his majority March 15, 1907. On the 6th day of April, 1907, George and Herman Sitterding, for the consideration of

$3,000, duly executed to appellant D. G. Beauchamp a deed in which they did "grant, bargain, sell and convey" unto Beauchamp, and unto his heirs and assigns forever, "all their right, title and interest in and to" the lot mentioned above. The deed contained no specific covenants to warrant and defend the title.

On the 8th of June, 1907, appellant brought suit in the circuit court of Greene County against appellees for the lot in controversy, claiming title and right to possession of same under his deed from George and Herman Sitterding, which he made an exhibit. The complaint, after describing the lot and deraigning the title thereto, alleged that the appellees were in possession of said property under and by virtue of the deed of conveyance executed by George Sitterding and H. H. Sitterding, Jr., on May 5, 1904, while the parties were minors, and it charged that they avoided and repudiated the same afterwards by executing a deed to appellant. It was alleged that appellant had tendered to appellees the sum of $1,720, the amount paid by them to the Sitterdings, which the appellees refused to accept; that appellees were liable to him for rentals on the lot in controversy for a period of three years and one month at the rate of $100 per month. Appellant prayed judgment for possession, and for damages in the sum of $2,500, and for all proper relief.

The answer and cross-complaint of appellees set up title to the lot sued for, under the deed from Emma Thomas and George and Herman Sitterding of May 5, 1904; denied that either of said heirs was under any disability when they executed the deed, and denied that appellees only paid $1,720 for the lot, but alleged that they paid $4,100—that is, $3,000 to the grantors themselves, and discharged their obligations for $1,100 more. The proceedings of the District Court of Oklahoma were set forth *in extenso,* and the duly authenticated copy of that judgment was properly pleaded; and it was alleged that under that judgment George and Herman Sitterding had the power to make the deed under which appellees claimed, the same as if they had been of full age, and that under the Constitution and the Revised Statutes of the United States full faith and credit must be given to that judgment here. The terms of the lease were set forth, and the possession of appellees thereunder and the improvements made by them, and it was alleged that the appellant had notice of appellees' rights

under the lease. The lease was pleaded in bar of appellant's right to recover possession of the premises. The cross-complaint contained the further allegation "that on April 6, 1907, the plaintiff, well knowing the contract aforesaid and of the payment by defendants of the purchase money for said premises, for a consideration of two hundred and fifty dollars acquired from said George W. Sitterding and H. H. Sitterding a deed of conveyance to said premises, which has been recorded in the office of said recorder of Greene County;" and they charge that whatever title he may have so acquired he held in trust for the defendants.

It was further averred that no dower had ever been assigned to said widow, Emma Thomas, and that by said conveyance she had assigned to them all of her dower rights in the said premises, and that they were the owners thereof. And they further averred that the premises consisted of a lot 50x100 feet, entirely covered by the two-story brick business house erected by defendants under said lease, and that it was indivisible so as to carve out said dower interest without prejudice.

There was a further allegation that the plaintiff procured George W. Sitterding to join in the deed to plaintiff for the premises in controversy by representing to him that the plaintiff represented defendants and wanted said deed from him (the said Sitterding) in order to affirm and make valid the deed which he, Sitterding, had previously made to defendants, and that said Sitterding agreed, for the sum of $100 paid by plaintiff to him, to make a new deed affirming and ratifying his previous conveyance, and that he executed said deed to the plaintiff with the intention and for the purpose of thereby confirming and ratifying the title previously conveyed to defendants.

They prayed that the deed from George Sitterding to plaintiff be taken as a confirmation and ratification of the previous conveyance made to defendants; also, that whatever title was acquired by plaintiff be decreed to belong to them and be divested out of him and vested in them; or, failing in this, that the said dower interest be adjudged to them, and that a lien be imposed upon said premises for the value of such improvements; or that the right to remove the improvements be otherwise protected, and for other relief.

The answer of appellant to the cross-complaint of appellees

contained allegations of fact to show that the district court of Oklahoma had no jurisdiction to render the judgment removing the disabilities of George and Herman Sitterding, and such jurisdiction was denied. Appellant denied that more than $1,720 was paid to the Sitterdings by appellees; denied that he held the title in trust for appellees; denied that the lease to appellees was of any value, or that appellees had the right to remove the building from the lot in controversy. He denied that appellant had procured the deed from George Sitterding by representing himself to be representing appellees for the purpose of procuring a deed affirming or making valid the deed previously made to appellees; denied that the deed was made by George Sitterding to appellant for the purpose of ratifying the deed made by George Sitterding to appellees; but alleged that George made the deed to appellant for the consideration of $125 paid him by appellant, and that he knew when he executed the deed that it was not to confirm any previous deed. The appellant further denied "that he procured an execution of said deed for a consideration of $250, but says that the actual consideration for said execution was the money that the said George W. Sitterding and Herman H. Sitterding had received from the defendants herein, together with the further sum of all the indebtedness that was probated against the estate of Herman H. Sitterding, Sr., and the further sum of $500.

The cause, on motion of appellees, was transferred to the chancery court and heard there upon the pleadings, exhibits and depositions. The court dismissed the appellant's complaint and quieted the title in appellees. Appellant prosecutes this appeal. Further facts will be stated in the opinion.

*Hawthorne & Hawthorne,* for appellants.

An order of a court removing the disabilities of a minor virtually fixes and establishes his majority at an earlier period of life than that fixed by the general law. 36 La. Ann. 250. The legislature of one State does not possess the power to pass a law overriding and controlling the laws of another State; neither can it pass a law authorizing a court to do it. 65 Mo. 349; Wharton on Conflict of Laws, § 114; Minor on Conflict of Laws, § 4. The "full faith and credit" clause of the Federal Constitution means no more than to regulate the acknowledged jurisdiction of the States over persons and things within their territory.

18 Wall 457. It establishes a rule of evidence, rather than of jurisdiction. 127 U. S. 292; 13 Pet. 312. It does not have the efficacy of judgment to be enforced by execution. To give it that force in another State, it must be made a judgment there. 116 U. S. 1; 16 Pet. 25. A capacity to take hold differs from a capacity to do and to contract. 129 Mass. 243. The title to and disposition of all immovable property should be regulated by the sovereign power within whose jurisdiction it is situated. 5 J. J. Marsh. 460; Minor on Conflicts of Law, § 11; 36 Ill. 376; 25 N. E. 870; 50 N. J. L. 324; 48 N. E. 592. Statutes which either give or destroy the power to contract have no extraterritorial force when the particular contract involved relates to the conveyance or incumbrance of real estate. 13 N. E. 39; 111 Ind. 453. A State statute removing the disabilities of married women does not enable her to convey lands in another State. 11 S. W. 38; 47 L. R. A. 608; 23 So. 12; 61 L. R. A. 880; 44 Wis. 136; 14 Atl. 302. The laws of the State where the real estate is situated determines the rights and obligations of the parties to the sale. 5 So. 299; 84 Mass. 202; 9 Wall. 23; 7 Cranch, 115; 9 Wheat. 565; 59 N. W. 929; 71 Ark. 505; 27 *Id.* 482; 15 Ark. 465; 47 Ark. 254. The deed made by the Sitterdings was a disaffirmance of the deed they made to defendants. 44 Ark. 353; 21 Ark. 592; 36 Ark. 376. A widowed mother, after marrying again, can not change the domicil of her infant children. 112 U. S. 554; 54 Ark. 627; 11 S. W. 892; 16 Ark. 377; 72 Ark. 299; 80 Ark. 351; Rodgers on Dom. Rel. § 656. Want of jurisdiction of the person may be shown. 18 Wall. 457; 25 L. R. A. 699; 137 U. S. 287; 35 Ark. 331. In order to overturn the recitals in a deed, the evidence must be clear, certain and satisfactory, and convincing. 31 Ark. 163; 40 Ark. 147; 48 Ark. 169.

*J. D. Block, Huddleston & Taylor, Morris M. Cohn* and *F. M. Sullivan,* for appellees.

Any really unconscionable conduct, connected with the controversy to which he is a party, will repel a party from a forum whose very foundation is good conscience. 7 Ark. 519; 47 Ark. 311; 53 Ark. 150. It refuses to aid a party to get possession of property as against other parties, where he had purchased the same for a totally inadequate consideration, with a view to obtaining an unconscionable advantage. 91 U. S. 643; 135 U. S.

457; 165 U. S. 386; 91 U. S. 206; 108 U. S. 218; 70 Fed. 376; 85 Fed. 231; 69 Fed. 740; 98 Fed. 872. When a court of a sister State has assumed jurisdiction over the person, it must be presumed that it had rightfully done so. 22 Ark. 389; 42 Ark. 20; 26 Ark. 17. The domicil of the mother, if she be living after the father's death, determines the domicil of the minor children. 80 Ark. 358. The jurisdiction to remove the disability of minority may well be rested on the legal domicil of the infant. 72 Ark. 303. When status is established by a court of another State having jurisdiction of the person, that is conclusive as to the status elsewhere. 13 Ark. 33; 22 Ark. 453; 9 Wall. 103; 21 How. 582; 198 U. S. 317. Judicial proceedings in a Territory are entitled to the same faith and credit as are similar proceedings in a State court. 176 U. S. 640; 103 U. S. 3; 42 Ark. 20; 13 Ark. 33; 12 Ark. 756; 35 Ark. 331; 48 Ark. 50; 52 Ark. 160; 54 Ark. 311. An infant's deed passes title subject to his right to disaffirm upon attaining his majority. 44 Ark. 153; 9 Wall. 626; 85 Ark. 560; 44 Ark 296. The covenants in a deed constitute no part of the conveyance, but are separate contracts. 44 Ark. 160; 7 J. J. Marsh. 144. Where the foreign law concerns the capacity of the parties to contract as affected by disability of infancy and coverture, the *lex loci contractus* is to govern. 87 Tenn. 448; 108 Ia. 518; 71 Ark. 505; Minor on Conflict of Laws, § 72, p. 145; 124 Mass. 375. And this is the rule with reference to contracts concerning real property. 167 Mass 211. The capacity to enter into a contract is one thing; the question of its interpretation and performance and the obligations assumed by it is another. The former is to be determined by *lex loci contractus;* the latter by *lex solutionis.* Minor on Conflict of Law, p. 145; Wharton on Con. Laws, § 427h. If a man has made a deed covenanting that another shall enjoy the premises, it shall never lie in his mouth to dispute the title of the party to whom he has so undertaken. 29 N. Y. 587; Rawle on Covenants, § 241; Bigelow on Estoppel, 322. The courts of the various States will interpret and fulfill the obligations of contracts made in a foreign State or with reference to its laws. 14 Ark. 610. The law of the domicil governs the state and condition of a person, whatever country he may remove to. 91 N. Y. 317. Adoption by judicial proceedings in a foreign State will be recognized in applying the local statute of descent. 57 Kan.

215; 102 Cal. 70; 18 R. I. 650; 148 Ill. 536; 129 Mass. 243. An ineffective or void deed does not affect a prior conveyance. 8 Ark. 74; 11 Ark. 475; 56 Ark. 334; 57 Ark. 550; Bump on Fraud Conv. 475; Wait on Fraud Conv. § 427. An infant cannot assign his right to avoid his deed. 6 Ark. 109; 31 Ark. 364; Schouler on Dom. Rel. 535; 41 So. 768; 76 Ala. 346; 94 Ala. 225; Devlin cn Deeds, § 87. A ratification after majority of an infant's deed, once operative, cannot be withdrawn. 14 Cal. 198; 55 Ill. App. 82. The doctrine of merger never applies where there are any equities which would be thereby defeated. 37 Ark. 144. It requires evidence to show that the interests of him who holds both rights will not be prejudiced before the rule allowing a merger will be applied. 66 Ark. 633; 84 Ark. 277.

WOOD, J. (after stating the facts). I. The Constitution of the United States declares that "full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State." Art. IV, § 1. And section 905 of the Revised Statutes of the United States provides a mode for the authentication of such records, and declares that the "records and judicial proceedings so authenticated shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken."

*Hancock National Bank* v. *Farnum,* 176 U. S. 640, was a suit in Rhode Island on a judgment recovered in Kansas. Judge Brewer, in passing upon the duly authenticated record of the Kansas court, after setting out the provisions of the Constitution and the acts of Congress, said (quoting earlier decisions) : "It is held that the same effect is to be given to the record in the courts of the State where produced as in the courts of the State from which it is taken." Our own court, in many decisions in suits in this State based on foreign judgments, has announced the same rule; and, indeed, no other rule in such cases could be announced. *Hensley* v. *Force,* 12 Ark. 756; *Buford* v. *Kirkpatrick,* 13 Ark. 33; *Peel* v. *January,* 35 Ark. 331; *Lockhart* v. *Locke,* 42 Ark. 17; *Glass* v. *Blackwell,* 48 Ark. 50; *Williams* v. *Renwick,* 52 Ark. 160; *Hallum* v. *Dickinson,* 54 Ark. 311.

Appellees rely upon these cases as authority for their contention that the duly authenticated record of the judgment of the

district court of Oklahoma should have the same effect as if it had been a judgment rendered here removing the disabilities of nonage of the Sitterdings. But this is not a suit based on a judgment rendered in Oklahoma. Moreover, these decisions are not in conflict with, but, on the contrary, only declare and uphold, the view that the provisions of the Constitution and Revised Statutes above were only intended to and did establish a rule of evidence. The Supreme Court of the United States in *Cole* v. *Cunningham,* 133 U. S. 107, at page 112, says: "The Constitution did not mean to confer any new power on the States, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. It did not make the judgments of the States domestic judgments to all intents and purposes, but only gave a general validity, faith and credit to them as evidence. No execution can be issued upon such judgments without a new suit in the tribunals of other States, and they enjoy, not the right of priority or privilege or lien which they have in the State where they are pronounced, but that only which the *lex fori* gives to them by its own laws, in their character of foreign judgments."

In *Wisconsin* v. *Pelican Ins. Co.,* 127 U. S. 265, at pages 291 and 292, it is said: "Those provisions establish a rule of evidence, rather than of jurisdiction. While they make the record of a judgment, rendered after due notice in one State, conclusive evidence in the courts of another State, or the United States, of the matter adjudged, they do not affect the jurisdiction, either of the court in which the judgment is rendered, or of the court in which it is offered in evidence. Judgments recovered in one State of the Union, when proved in the courts of another government, whether State or National, within the United States, differ from judgments recovered in a foreign country in no other respect than in not being re-examinable on their merits, nor impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties."

The Supreme of Georgia says: "This clause ('full faith and credit') is not to be received in the fullest import of the terms. It is referrible to such records, etc., as pleadings and evidence. Any other construction, which would give the same effect to a foreign judgment as to our own, would, indeed, be

to give to the laws of one State complete operation in another—
would be to make a judgment in one State bind property in an-
other." *Joice* v. *Scales,* 18 Ga. 725; 23 Cyc. 1545, 1546, and
1556, 1557, and cases cited in notes; *McElmoyle* v. *Cohen,* 13
Pet. 312; *Brengle* v. *McClellan,* 7 Gill & J. 434, 438; *Shelton*
v. *Johnson,* 36 Tenn. (4 Sneed) 672-682.

Conceding, then, the validity of this foreign judgment, we
have given it the full faith and credit that it must receive when
we consider it conclusive evidence that the district court of Okla-
homa has adjudged a majority status for the Sitterdings before
they were twenty-one years of age. *Bowen* v. *Johnson,* 5 R. I.
112; *Olney* v. *Angell,* 5 R. I. 198. But that is not the equivalent
of a judgment here fixing such status for the minors. Far from
it. Under our statute, an infant does not attain his majority un-
til he is twenty-one years old. Kirby's Digest, § 3756.

II. The proof is, that the deed of the Sitterdings to ap-
pellee, conveying the lot in controversy, was executed in Okla-
homa, and appellees contend that the effect of the judgment was
to make the deed an irrevocable conveyance. The judgment of
a court under a statute authorizing the removal of disabilities
of nonage could not be of any higher authority, or possess greater
sanctity, than a direct enactment declaring majority at an age of
21 years. *Proctor* v. *Hebert,* 36 La. Ann. 250. That enlightened
sentiment of international comity, based upon the principles of
right and justice as well as good policy, generally causes the
courts of one State to enforce, as far as practicable, the laws of
another as to contracts and other transactions therein between
private individuals. Minor on Conflict of Laws, § § 3 and 4.
But this rule of private international law or comity can not be
invoked "where the enforcement of the foreign law would con-
travene some established and important policy of the State of
the forum," nor where the question relates to the transfer of
the title to real property. Minor on Conflict of Laws, § 5.
*Smead* v. *Chandler,* 71 Ark. 505. Says Mr. Minor: "Since im-
movable property is fixed forever in the State where it lies, and
since no other State can have any jurisdiction over it, it follows
necessarily that no right, title or interest can be finally acquired
therein, unless assented to by the courts of that State, in accord-
ance with its laws." Minor on Conflict of Laws, § 11; *Oakey* v.

*Bennett,* 11 How. 33; 1 Wharton on Conflict of Laws, § 276 b, p. 617. This general principle has been often recognized by this court. *McDaniel* v. *Grace,* 15 Ark. 465; *Clopton* v. *Booker,* 27 Ark. 482; *Williams* v. *Nichol,* 47 Ark. 254.

It has long been the rule in this State that an infant's deed conveys title to his real estate subject to his right to disaffirm when he becomes of age. *Bagley* v. *Fletcher,* 44 Ark. 153; *Harrod* v. *Myers,* 21 Ark. 592. See also *Stull* v. *Harris,* 51 Ark. 294; *Watson* v. *Billings,* 38 Ark. 278; *Fox* v. *Drewry,* 62 Ark. 316; *Tobin* v. *Spann,* 85 Ark. 556.

It is deemed a wise policy of our law for the protection of the landed estate of infants to give them the untrammeled right to avoid their deeds on attaining their majority. The right is often their only shield against fraud, and their only remedy against improvident contracts. It has been held of such transcendent importance that an infant will not be estopped to assert it even by his own fraudulent representations as to his age after he appears to be full grown. *Tobin* v. *Spann,* 85 Ark. 556. If the consideration for the deed has passed out of his hands, he may rescind without returning it. 22 Cyc. 537; *St. Louis, I. M. & S. Ry. Co.* v. *Higgins,* 44 Ark. 293. See also *Stull* v. *Harris,* 51 Ark. 294.

No rule of comity would justify ignoring this settled policy upon which property rights have been grounded, to meet the demands of any case, be it ever so meritorious and exceptional in its facts. 2 Wharton on Conflict of Laws, § 428 a. So, if we consider the deed and its covenants as one instrument, and as an executed contract transferring the title to land, then, as we have seen, the *lex rei sitae* prevails. Minor on Conflict of Laws, § 11. note 5; §§ 12 and 174; 1 Wharton on Conflict of Laws, § 276a, 276b; *Sneed* v. *Ewing,* 5 J. J. Marshall, 460; *Thompson* v. *Kyle,* 23 So. 12.

But appellees argue that the covenants for title are separate contracts, creating personal obligations, and therefore governed by the *lex loci contractus.* In *Bagley* v. *Fletcher, supra,* it is said that "the covenants in a deed constitute no part of the conveyance, but are separate contracts." In the same case it was said that the infant "was not bound by the covenants contained in her deed," and that these covenants were void. Hence, by the

authority of this case, even if the covenants are considered as independent contracts, they are void, or, rather, voidable, just as is the deed, and fall with it when it is disaffirmed. If an infant has the right to disaffirm his deed on reaching majority, as we have so often held, it would be incompatible with such holding to say that he could enter into covenants in the same deed, or otherwise, that would defeat such right. See *Connor* v. *Murray*, 84 Mass. 202, at p. 204. Therefore, even if these covenants create obligations that would, generally speaking, be governed by the *lex loci contractus*, still that law would have to give way to the local policy as declared by this court.

The covenants under consideration, however, are not personal in the sense that the obligations incurred under them are governed by the law concerning movables. There are many contracts relating to real estate that are so governed. For example, covenants of seisin, of right to convey and against incumbrances, and executory contracts for deeds or other instruments containing covenants that do not run with the land. All these contracts, in the absence of statutory law or an expressed intention to the contrary, are usually governed by the law of the place where such contracts are made. Such is not the case, however, with contracts containing covenants that run with the land—as, for instance, covenants of warranty and for quiet enjoyment; or covenants that can only be performed where the land lies, as, for instance, to defend title, to pay taxes, to repair, etc. These are governed by the law of the place where the land is situated. Minor on Conflict of Laws, § 185.

This court early recognized the distinction between personal covenants (using the word "personal" with reference to situs) and covenants that run with the land, and therefor savor of the realty. In *Logan* v. *Moulder*, 1 Ark. 313, we held that covenants of warranty belong to the latter class. See also *Ross* v. *Turner*, 7 Ark. 123. We believe the authorities with practical unanimity hold to this rule, observing the distinction announced by this court between personal covenants and those that run with the land. Rawle on Covenant for Title, § § 202 and 213; 1 Wharton on Conflict of Laws, § 276d, pp. 630, 631.

A careful analysis and differentiation of the case cited by the learned counsel for appellees will discover, we think, that, when

this distinction is kept in mind, they are not in conflict with the doctrine we have expressed. As Mr. Wharton says: "The distinction, as affecting the governing law, between questions that relate to the title to the property and those that relate merely to the personal rights and obligations of the parties has been expressly recognized in a number of cases." I Wharton, Conflict on Laws, § 276d, p. 626. He cites, as supporting this view, the leading case of *Polson* v. *Stewart,* 167 Mass. 211.

We cannot review all the cases, but the above case of *Polson* v. *Stewart* is especially relied on, and may be taken as an example of them all. It was a suit for specific performance, to enforce a covenant made by a husband with his wife in North Carolina, by which he contracted to surrender all of his marital rights in certain lands of hers in Massachusetts. The contract was lawful in North Carolina, where the parties were domiciled, but would have been void according to the laws of Massachusetts. The court said: "It is true that the laws of the States can not render valid conveyances of property within our borders which our laws say are void, for the plain reason that we have exclusive power over the *res. Ross* v. *Ross,* 129 Mass 243, 246; *Hallgarten* v. *Oldham,* 135 Mass. 1, 7, 8. But the same reason inverted establishes that the *lex rei sitae* cannot control personal covenants, not purporting to be conveyances, between persons outside the jurisdiction, although concerning a thing within it. Whatever the covenant, the laws of North Carolina could subject the defendant's property to seizure on execution, and his person to imprisonment for a failure to perform it. Therefore, on principle, the law of North Carolina determines the validity of the contract." It will be noticed that the basis of the opinion was that the contract to release the marital rights was a personal covenant, and should be so treated in a suit for specific performance. The court cited with approval *Ross* v. *Ross,* 129 Mass. 243, wherein it is said: "A capacity to take and have differs from a capacity to do and contract; in short, a capacity of holding from a capacity to act. Generally speaking, the validity of a personal contract, even as regards the capacity of the party to make it, as in the case of a married woman or an infant, is to be determined by the law of the State in which it is made. * * * And the validity of any transfer of real estate by act of the

owner, whether *inter vivos* or by will, is to be determined, even as regards the capacity of the grantor or testator, by the law of the State in which the land is situated. * * * But the status or condition of any person, with the inherent capacity of succession or inheritance, is to be ascertained by the law of the domicil which creates the status."

All of which shows that the Supreme Court of Massachusetts, in *Polson* v. *Stewart* above, was speaking of the capacity of the parties to enter into a personal covenant for the release of the husband's marital rights. Mr. Minor, speaking of this case, says: "The question was not of the formal validity of the covenant, but of the capacity of the parties."

The case of *Polson* v. *Stewart* is invoked by appellees as authority for the doctrine that the Sitterdings might enter into valid personal covenants in Oklahoma that would prevent their annulling conveyances that were voidable in Arkansas, where the land is situated; but, as we view it, the holding is expressly to the contrary, for it says: "The laws of other States can not render valid conveyances of property within our borders which our laws say are void." We can see no analogy whatever between contracts containing covenants for the relinquishment of marital and dower rights, or Scotch terce, and covenants of warranty for title in fee. The one creates purely personal obligations, which are governed by the proper law for personal covenants; the other creates obligations that follow the *res,* partake of its nature, and are therefore governed by the proper law for covenants real. I Wharton, Confl. of Laws, 631; *Roberson* v. *Queen,* 11 S. W. 38; *Woodward* v. *Woodward,* 11 S. W. 892; *Walling* v. *Christian & Craft Gro. Co.,* 47 L. R. A. 608.

A covenant of warranty, says Mr. Rawle, runs with the land "for the protection of the owner in whose time the breach occurs, and until then, passing with the estate by descent or by purchase, by voluntary or by involuntary alienation, and may therefore of course be enforced, not only by the covenantee and his representatives, but by heirs, devisees and alienees, who claim under the seisin vested in him." Rawle on Covenants for Title, § 213. Not so with personal covenants.

As eviction is necessary to a breach of warranty, it can not be ascertained that there has been an evic-

tion under a paramount title except by the law of the situs of the land. Therefore, conceding that the Sitterdings had the capacity to enter into covenant of warranty in Oklahoma, the effect of the obligations imposed by that covenant must be determined by the laws of Arkansas. Here is the place of performance, and hence the *lex solutionis* is the proper law to govern. *Tillotson* v. *Pritchard,* 60 Vt. 94; *Riley* v. *Burroughs,* 41 Neb. 304; *Kling* v. *Sejour,* 4 La. Ann. 128; 1 Wharton, Confl. Laws, § 276d, pp. 632, 633; Minor, Confl. of Laws, § 12, p. 37, § 185 and cases cited in note 1. It is unnecessary to determine whether the district court of Oklahoma had jurisdiction to render judgment removing the disabilities of the Sitterdings, for it follows from what we have said that they had the right to disaffirm, even if such judgment be valid.

III. The next question is, have they done so? They were *sui juris* when they executed their deed to appellant. It is unnecessary to detail the evidence showing the negotiations resulting in the execution of the deed. The terms of conveyance, "grant, bargain, sell and convey," used therein made it at least a quitclaim deed under our statute. Sec. 731, Kirby's Digest. The grantors received a consideration in cash of $250. The evidence is conclusive that Herman Sitterding executed the deed, intending it as a distinct disaffirmance of his prior deed to appellees. The evidence is in conflict as to whether George Sitterding executed the deed for that purpose or for the purpose of ratifying the former deed; but our conclusion is that a decided preponderance of the evidence shows that George Sitterding also executed the deed to appellant for the purpose of disaffirming his former deed. The evidence warrants the conclusion that appellant advised the Sitterdings that he expected to enter suit against appellees if they executed their deed to him, and, knowing this to be his purpose, they made the deed for a cash consideration to them and an agreement on the part of appellant to repay to appellees the money they had paid for the lot.

The appellees alleged and contend that appellant made certain misrepresentations to the Sitterdings, and concealed from them the fact that he intended to repay the appellees by charging them rent for the land in controversy, and that such conduct rendered the deed of the Sitterdings to him invalid, and consti-

tuted appellant a trustee *ex maleficio* for them in the purchase of the lot. The Sitterdings are not here complaining of any fraud on them in obtaining their deed; and, if they were, the evidence is not sufficient to justify this court in setting it aside at their instance for fraud. Appellant knew the Sitterdings had the legal right to disaffirm their deed to appellees, and he had a perfect right to deal with them and make the best terms with them he could as to the purchase. It is not a question as to whether his conduct in making the purchase, or theirs in making the sale, is reprehensible under any code of morals or professional ethics. The law giving them the right to deal with each other, the appellees can not call them to account. Appellant owed the appellees no duty in the premises. Devlin on Deeds, § 99; *Black* v. *Hills,* 36 Ill. 376. Appellees must also be held to a knowledge of the law giving infants the right, on attaining their majority, to disaffirm their deeds.

Since the deed to appellant was not, under the evidence, made to ratify the deed to appellees, it could not have been made for any other purpose than a disaffirmance thereof. The deed to appellant, although only a quitclaim, operated as a disaffirmance of the deed to appellees, although their deed was a warranty deed. 22 Cyc. and authorities cited. "There can not be a more decisive act of disaffirmance than the conveyance of the same land to another person, who is not in privity with the first grantee." *Bagley* v. *Fletcher,* 44 Ark. 153.

But appellees contend that this doctrine is not applicable here for the reason that the land in controversy in *Bagley* v. *Fletcher, supra,* was wild and unimproved, while in the instant case it is in the possession of the appellees. The doctrine that "an infant, to avoid his deed, must enter on the land and oust the occupant, or, if already in possession, must perform some act explicitly evidencing his intention to defeat the conveyance," can have no place under our statute. Sec. 736, Kirby's Digest, reads: "Any person claiming title to any real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest in the same manner and with like effect as if he was in actual possession thereof." Under this statute, "where one who has conveyed his property while an infant executes, after his arrival at majority, another deed conveying the property to an-

other person, the first deed is thereby disaffirmed." 22 Cyc. 556, note 71, and 557, note 78; 5 Am. & Eng. Enc. L. 2d Ed. 837, n. 1; *Haynes* v. *Bennett,* 18 N. W. 539.

Since the last deed is a disaffirmance of the first, and conveys the title to the lot in controversy to the appellant, what are his rights under it?

IV. The effect of the deed to appellant was to make void the former deed of his grantors to appellees, and appellant succeeded to all the right of the grantors in the lot in controversy. It is conceded that the widow, now Mrs. Thomas, owned an unassigned dower in the lot. This passed to appellees under the deed which she executed May 5, 1904, jointly with the Sitterdings; and their disaffirmance could have no effect on her deed. The deed was hers as well as theirs, and conveyed all her interest in the lot mentioned. It is true that where a greater and less estate meet in the same person without any intermediate estate—and, we may add, without any contravening equities—the less estate, in the language of the old law, is drowned or merged in the greater and ceases to exist. 2 Rapalje & L. Law Dict. 815; *Youmans* v. *Wagener,* 3 L. R. A. 447; *Mangum* v. *Piester,* 16 S. C. 316. But the doctrine of merger can have no place here. The extinguishment of the greater estate by the deed of disaffirmance necessarily destroyed any merger, if there was one, and left the equitable title to the unassigned dower in appellees. *Weaver* v. *Rush,* 62 Ark. 51; *Flowers* v. *Flowers,* 84 Ark. 557. Moreover, "the doctrine of merger never applies where there are any equities which would be thereby defeated." *Simpson* v. *Robinson,* 73 Ark. 132; *Bemis* v. *First Nat. Bank,* 63 Ark. 625. See also *Neff* v. *Elder,* 84 Ark. 277.

If there was a merger of the dower, it was when the dower and fee united in appellees by their purchase from Mrs. Thomas and the Sitterdings; but the two estates never united in the Sitterdings. They never had a dower interest, and their deed to appellant could only transfer to him such estate as they had. They never acquired any estate through appellees. The appellant, therefore, never purchased the dower, but appellees did purchase and pay for it. It would inequitable to take it from them and give it to appellant.

The appellant, then, is the owner in fee of the lot in controversy, subject to appellees' unassigned dower right.

V. The only remaining question is, How are the rights of the respective parties to be enforced? The appellees in their cross-complaint alleged that they had paid $4,100 for the lot— "that is, $3,000 to the parties and by paying off obligations for the grantors in the sum of $1,100." Appellant in his answer denied that over $1,720 was paid the Sitterdings, but he does not deny that appellees paid obligations for the Sitterdings, or the amount thereof. On the contrary, he alleges that the consideration he was to pay for his deed was "the money George W. and Herman H. Sitterding had received from the defendants, the amount of the claims which had been probated." etc. The appellees show that the amount of the claims against the estate of the Sitterdings paid by them was $700. While appellant in his testimony says that he was to pay "back the money that Bertig had paid them," the Sitterdings, he does not say that he was not to pay also the obligations that Bertig had paid for them. He was silent as to this. He does not show that the allegation in his answer, to the effect that he was to pay these obligations, was untrue. As he made the allegation, he should be bound by it.

Furthermore, aside from the contract, equity will compel the appellant, before he can recover possession, to repay the appellees for the debts which they discharged against the Sitterding estate. For this the estate would be liable after the minors reached majority, their homestead rights having expired. Appellees, who held this debt against the estate, made it a part of the consideration of their purchase from the Sitterdings, and they, the Sitterdings, thus received the benefit of it. Under the doctrine of *Stull* v. *Harris,* 51 Ark. 294, they, or appellant who succeeds to their rights, must do equity and repay this amount before a recovery of the property can be had. 22 Cyc. 557; *Eureka Co.* v. *Edwards,* 71 Ala. 248.

The evidence shows that $400 was paid by the appellees, not to the Sitterdings, but to their own agent for making the negotiations. This amount, therefore, cannot be considered as a part of the consideration that appellant was to pay.

According to appellant's own pleadings and evidence, the money he was to pay appellees, in addition to what he was to

pay the Sitterdings in person, was the consideration for the deed by which they disaffirmed. This contract between appellant and the Sitterdings was for the benefit of appellees, and they are entitled to have the money that appellant agreed to pay them refunded before he can recover under his deed.

The improvements made by appellees were under their lease contract, and are referrible to that and not to their dower estate, which was acquired after these improvements were made. Under the terms of the lease, which the deed of disaffirmance *ipso facto* reinstated, the improvements were chattels and belonged to the appellees.

Our statute impowers the probate court, upon being satisfied that it would be for the best interest of the estate of a minor, to make an order authorizing the guardian to rent the lands of such minor publicly or privately, as in his judgment shall be best for the interest of his ward, subject to the approval of the probate court, or the judge thereof in vacation. Secs. 3789-90, Kirby's Digest. It also gives the probate court power to sell or lease for purposes of reinvestment or putting proceeds on interest. Sec. 3801, Kirby's Digest.

At the common law the guardian in socage could make a lease in his own name of the lands belonging to his infant ward, to continue only till the infant was fourteen years of age, unless the latter chose to continue it longer. But "the common law," says Drake, Justice, "in its ever-watchful care of the interest of minors, has suffered their guardians to make advantageous leases for them continuing at the option of the minor beyond the age of twenty-one. *Snook* v. *Sutton*, 5 Halstead (N. J. L.), 133 and authorities cited.

Under the common law, or statutes simply declaratory thereof, leases made by the guardian to extend beyond the term of the guardianship are voidable. Rodgers on Domestic Relations, 861, note 5; 15 A. & E. Ency. Law, (2d Ed.) 68 and 69, note 1; *Emerson* v. *Spicer*, 46 N. Y. 594; *Ross* v. *Gill*, 1 Wash. (Va.) 114; *Ross* v. *Gill*, 4 Call (Va.) 250; *Talbot* v. *Provine*, 7 Baxter (Tenn.) 510; 1 Bac. Abr. Leases; 2 Kent, Com. 228; 1 Wash. Real Prop. 307; Schouler, Dom. Rel. § 350, note 1; *Putnam* v. *Richie*, 6 Paige 390; *Field* v. *Scheiffelin*, 7 Johns. Ch. 150; *People* ex rel. *Hannigan* v. *Ingersoll*, 20 Hun, 316.

In England from the time of Lord Hardwicke, the High Court of Chancery had no power to lease or sell an infant's real estate without the aid of an act of Parliament. The course was to give reference to a master to inquire whether it would be for the benefit of the minors that application be made for an act of Parliament. *Russel* v. *Russel,* 1 Molloy, 525. But the supreme lawmaking power in our State has by the above statutes invested the probate court with power to sell and lease the lands of infants. The matter is left in the judgment of the probate court, and there are no limitations prescribed for the term of lease, and we are of the opinion, from the above and cognate provisions of chapter 76, Kirby's Digest, that none were intended. The best interest of the estate of the minor is the prime and only consideration, and that seems to be the only limit to his discretion within the statutory provisions. Complying with these, the intention of the law makers was to give the probate courts plenary power in the premises. Hence the lease made by order of the court was valid, although it was to continue beyond the minority of the infants.

The improvements are not a part of the freehold, and therefore appellees and appellant, as to these, are not tenants in common. The lease had not expired at the time of the trial, and appellees were then entitled to possession under it, and will be until six months after its expiration, to have the improvements removed from the premises.

Under the case of *Tobin* v. *Spann,* 85 Ark. 556, appellant was entitled to rents only from the date of the deed of disaffirmance, which was April 6, 1907. From that date he is entitled to two-thirds the amount of the rent specified in the lease, with interest at the rate of six per cent. per annum after maturity. The appellees are entitled, also, from that date to have the money —$2,700—which the appellant had agreed to pay them under the terms of his contract with the Sitterdings, refunded with interest on the amount at the rate of six per cent. per annum from that date until it is paid.

It would be premature to make any decree touching the assignment of the dower interest of appellees until the expiration of the time during which they may hold the property under their lease. The condition of the property at that time will furnish a

proper criterion for ascertaining the proper value of the un-
assigned dower interest and the method to be pursued in its
allotment. The suit of appellants for possession was in fact pre-
mature. But, inasmuch as the court retained the case, and the
court and the parties have treated it as a suit·to settle and quiet
the rights and title in and to the lot in controversy between the
respective parties, we have defined and adjudged their rights as
indicated above.

The decree quieting the title in appellees will therefore be
reversed and the cause remanded with directions to the chancery
court to enter a decree adjudging the rights of the parties in
accordance with this opinion; and for such other and further
proceedings as may be necessary and not inconsistent herewith.