INHABITANTS OF BANGOR *versus* WARREN.

A deed of land for a valuable consideration, intended to be absolute, made and received with a fraudulent intent to hinder or delay creditors, is not, on that account, void as to *subsequent* creditors, *unless* some secret trust was reserved for the benefit of the grantor.

A negotiable note, taken for a prior debt, is a payment.

The right of re-entry for a breach of condition in a conveyance of land, pertains only to the grantor and his legal representatives. It is not included among the rights mentioned in R. S. c. 94, § 1, and cannot be taken on execution.

ON EXCEPTIONS from *Nisi Prius*, TENNEY, J. presiding.

Philip Coombs, Philip H. Coombs and others owned a tract of land in Bangor. They conveyed it, in 1835, *for the expressed consideration of one dollar,* to the city, upon a condition that *it should be inclosed as a common, and be kept unintersected by roads, for the proper use of the public forever.* The deed was recorded in February, 1836.

The defendant having obtained several judgments against P. & P. H. Coombs, seasonably levied his executions upon the land in 1841 and 1842, his attachments thereof having been made in 1837. This is a writ of entry against him for the land, brought in September, 1846.

The tenant, in order to show that the conveyance by P. Coombs and P. H. Coombs, to the city, was fraudulent and void, as to the tenant, their creditor, offered evidence that they were insolvent when it was made, stating *that* to be the only evidence, of any description, which he should offer as to the fraud. The evidence was excluded. He then offered to prove that the bill of exchange upon which one of his judgments was recovered, was given in renewal for paper which originated in 1835. The evidence was excluded.

He then offered to prove that his levies were delayed in order that some prior attaching creditors, on demands existing prior to the conveyance, should first levy, and that they did in fact levy on a large portion of the debtor's estate. The evidence was excluded.

He then offered to prove that the city, prior to his levies,

had forfeited the land by a non-compliance with the conditions of the deed. For this purpose, he offered a lease made by the city in 1839, by which they demised the land to Sayward & Wingate for seven years, within which period the lessees were to decorate the same with transplanted trees, according to a prescribed plan; and, at the end of the term, to leave the land in a smoothed condition and laid down to grass. He also offered oral evidence that, under the lease, Sayward & Wingate fenced up the land, and excluded all ingress and egress to and from the same. The lease and the oral evidence were excluded.

The demandants, in order to dislodge the imputation of fraud in the deed, and to show that the grantors received an adequate consideration for the land, introduced, (under objection,) — 1st; a contract executed by Roberts and others, in which they stipulated to purchase sixty-seven small lots of the grantors, lying on the several exterior lines of the common, at the price of $300 for each lot; upon a condition that the " common should be granted to the city to be forever used as a public common," and 2d, copies of many deeds, made to Roberts and others of lots around the common at the above mentioned prices.

The Judge ordered a verdict, *pro forma,* for the demandants, and the tenant excepted.

*Cutting,* for the tenant.

1. No title passed from the Messrs. Coombs to the city; because the consideration expressed in their deed being merely nominal, the law construes the transaction to be nothing more than a gift.

And the tenant " offered to show that at the time of the conveyance the Coombses were actually insolvent." It was therefore, a fraud on creditors; the grantors not being in a situation to make gifts.

The Statute of 13 Eliz. c. 5, declares all gifts, conveyances and alienations, of real or personal estate, whereby creditors may be delayed or defrauded, void as against creditors.

Perhaps it may be contended that this statute only protects prior creditors, and not subsequent ones, and authorities may be cited, which seem to sustain that position.

No doubt a *solvent* person may make a voluntary conveyance or gift; but the question still returns, can an *insolvent* person do the same thing?

And upon what principle should the *prior* creditor be protected and not the *subsequent* creditor? *Walker* v. *Burrows*, 1 Atk. 94; *Reade* v. *Livingston*, 3 Johns. Ch. 481; *Doe* v. *Routledge*, 5 Cowp. 711; *Parker* v. *Proctor*, 9 Mass. 390; *Bennett* v. *Bedford Bank*, 11 Mass. 421.

The deed from the Coombses to the city was not recorded until 1836. The tenant offered to prove that the bill of exchange, on which one of his judgments was founded, was given in renewal for paper, which originated in 1835. A renewal is not payment, and therefore the tenant is to be viewed as a *prior* creditor.

2d. The conveyance was made upon conditions, subsequently to be performed by the grantees. ·The language of the deed is, " and also in consideration, and *upon condition*, that the parcel or tract of land herein intended to be conveyed, shall be inclosed as a common and be kept by said city unintersected by roads, for the proper use of the public forever. To have and to hold, &c., to the proper use of the public as a common forever. Shall well and truly hold as aforesaid, for the purposes as aforesaid, forever."

Now, I contend that the city have forfeited all interest, if they ever had any, by reason of a non-performance of those conditions.

In March, 1835, the deed was delivered; the first Act of the city touching the premises, was in May, 1839, more than four years subsequent to the conveyance.

What then? Did they do any thing in submission to the conditions? Directly the reverse.

They leased the premises to Sayward & Wingate for the term of seven years, who fenced up this common (falsely so

called,) and excluded all persons, even the grantors themselves from its enjoyment.

Was such conduct, the having and holding *to the proper use of the public as a common forever?   Hayden* v. *Stoughton,* 5 Pick. 528 ; *Gray* v. *Blanchard,* 8 Pick. 284.

Assuming then that the grant was upon a condition subsequent, and that the condition had been broken, the Coombses' "right of entry" was attachable and subject to a levy.   R. S. c. 94, § 1 ; R. S. c. 114, § 30.

The defendant took an actual possession by virtue of his levies in 1842, and therefore no formal entry, in order to revest the estate in himself, could be necessary.   *Kennebec Bank* v. *Drummond,* 5 Mass. 321.

3. The deed is void, because the city were not legally authorized to receive it, coupled with a condition, that the lot "should be *inclosed* as a common."

How inclosed ?  with a wooden or metalic fence ?  Suppose the kind of fence had been mentioned at a cost of $10,000, could money for that purpose have been raised by a legal tax ?  What law of the State gives a city or town such authority ?

The deeds to Roberts and thirteen others, and also the contract signed by Roberts and thirty-eight others, were inadmissible.   They contradict the deed to the city, as to its consideration.

They were transactions between other parties, — were immaterial to the issue ; did not authorize an insolvent person to give away so large a territory, even for the purpose of trying an experiment, thereby jeopardizing his creditors.

*Wakefield,* city solicitor, for the demandants.

TENNEY, J. — The city of Bangor claims the premises by virtue of a deed from Philip Coombs, Philip H. Coombs and others, dated March 26, 1835, accepted by a vote of the board of aldermen, and of the common council, on April 11, 1835, and recorded Feb. 24, 1836, upon the condition that the premises be inclosed as a common and be kept by the

city, unintersected by roads, for the proper use of the public forever.

The tenant derives his title from the levy of certain executions against Philip Coombs and Philip H. Coombs, issued upon judgments rendered in actions against them on certain drafts, all bearing date subsequently to the execution and delivery, and the registration of the deed to the city. And he offered to show, that, at the time of the conveyance of Philip H. Coombs and Philip Coombs to the city, they were actually insolvent, as proof of constructive and legal fraud; and it was at the same time stated by the tenant's counsel, that they should offer no other evidence of fraud of any description. And they offered to show further, that the bill of exchange for the recovery of which one of the actions was brought that resulted in a judgment, for the satisfaction of which, a levy was made, was the renewal of paper, which originated sometime in the year 1835. The evidence so offered, on being objected to, was excluded.

Assuming that the deed of the tenant's debtors was a voluntary conveyance, and wholly without consideration, can the tenant avail himself of this fact, to avoid the deed, on proof that these persons, who were grantors therein were insolvent at the time when they executed the deed? The doctrine of the law is too well settled 'upon this point to need further discussion. This Court gave full consideration to the question in the case of *Howe* v. *Ward*, 4 Greenl. 195, and in *Clark* v. *French*, 23 Maine, 221, and the principles announced in each have been uniformly adhered to in this State.

But it is insisted, that in one of the judgments the tenant is to be treated as an attaching creditor before the constructive notice to him in the record of the deed to the city, inasmuch as the foundation of that judgment was a draft for paper originating anterior to that time. This draft on which the action was commenced was negotiable, and where such have been taken for a preëxisting debt, it has been held in this State and in Massachusetts, that the prior debt was thereby paid.

The tenant offered a lease of the premises made by authority of the city to Sayward and Wingate, dated May 16, 1839, and the consequent occupation by the lessees under it, by fencing up and excluding all ingress and egress to or from the premises, as evidence of the non-performance of the condition in the deed, prior to the tenant's levies, and therefore, that the premises were thereby forfeited. This evidence was not admitted.

The condition is manifestly subsequent in its character, and this is admitted by the tenant's counsel. And "it is a rule of the common law, that none may take advantage of a condition, but parties and privies in right and representation as heirs, executors, &c., of natural persons, and the successors of politic persons; and that neither privies nor assignees in law, as lords by escheat, nor as grantees of reversions, nor privies in estate, as he to whom a remainder is limited, shall take the benefit of entry or reëntry by force of a condition." 1 Shep. Touch. 149. Chancellor Kent remarks, that "conditions can only be reserved for the grantor and his heirs. A stranger cannot take advantage of the breach of them. There must be an actual entry, for the breach of the condition." 4 Com. § 56; Stearns on Real Actions, 24.

But the counsel for the tenant contends, that as a creditor may take in execution for his debts, among other things, "all rights of entry into land" of his debtor, R. S. c. 94, § 1, the levy upon the premises was effectual to pass the right of entry on the ground of a forfeiture for the breach of the condition in the deed, to the tenant, as a creditor, and his subsequent actual possession has made perfect to him the title in the premises.

The right of entry referred to, in the statute relied upon, is undoubtedly the first and most simple remedy for one, who has been *ousted* or *dispossessed* of a freehold. It is for the purpose of revesting an estate, of which the claimant or his ancestor or predecessor has been unlawfully deprived, and is different in some respects from the right or title of entry for a forfeiture on breach of a condition. Jackson on Real Actions,

1 and 2. Such an entry is defined to be " an extra judicial and summary remedy against certain species of injury by *ouster*, used by the legal owner, when another person, who has no right, has previously taken possession of the lands or tenements." 2 Jacob's Law Dic. 380. It is unlike the entry where one entitled, wishes to take advantage of a breach of a condition in the deed ; in which case, the entry is essential to the title of the claimant, and the time, when it is to be made, will depend much upon the instrument or contract by which it is reserved. Ib. ; Stearns on Real Actions, 25. The last species of entry is usually denominated an entry or reëntry for a forfeiture on breach of a condition.

The statute gives the right to the creditor to levy his execution upon " all rights of entry" in the land of the debtor in the manner mentioned in this chapter. And it is provided in the 18th § of c. 94, " when an execution is levied on land into which the debtor has or is supposed to have the right of entry, and of which any other person is then seized. the officer shall deliver to the creditor a momentary seizin and possession of the land, so far as to enable the creditor to maintain an action therefor in his own name, and on his own seizin." It is evident from this section, that the entry before referred to is that entry to which a party who has been disseized, or one who succeeds to his place, has a right, in order to regain that possession which has been usurped by one, who had no right to the land.

The statute contains no provision, by which a creditor can, by a levy of his execution upon land conveyed by his debtor in a deed containing a condition subsequent, acquire the rights of the grantor, and claim the estate for a breach of the condition. And it cannot be admitted, that so important a change as that contended for in behalf of the tenant, in the common law, would follow from the provision, that " all rights of entry into lands" of the debtor may be levied upon by his creditor. On the construction contended for, the right would exist without any remedy expressly provided, by which it could be enforced and made available.

Bangor *v.* Warren.

The evidence offered to show, that the tenant's levies were delayed for the purpose of allowing prior attaching creditors to levy on demands existing previous to the conveyance to the city, and that such creditors did levy upon large portions of the lands of Philip Coombs and Philip H. Coombs, could have no legitimate effect upon the case. We are to look only to the premises on which the tenant made his levy, and determine whether he was a creditor, prior or subsequent to the record of the deed thereof to the city; and the rights of neither party can be affected by such delays and the levies made by other creditors.

It is contended, that the deed to the city is void, because the city was not legally authorized to receive it, coupled with a condition, that the premises should be enclosed as a common. It is denied that the city can make an appropriation to enclose a common. This is a point, which was not raised at the trial, and cannot now with propriety be considered. The city charter and by-laws are not referred to in the case, and we cannot decide, that the city have not the authority to enclose a parcel of land for a city common. But in this question the tenant has no lawful interest, because such a deed is good, until avoided by the grantor himself or by some one privy in estate. *Inhabitants of Worcester* v. *Eaton,* 13 Mass. 371.

The deeds from Coombs to Orin Favor and thirteen others, were admitted in evidence for the city, against the objection of the tenant, and also the contract executed by Amos M. Roberts and others. The decision of the case against the tenant has been put upon other grounds, than that which would render this evidence material. These documents could have had no effect whatever upon the verdict, as it was directed to be rendered, and the tenant was not injured thereby. *Exceptions overruled.*

*Judgment on the verdict.*

NOTE. — HOWARD, J. took no part in this decision.