## MOORE *v.* SHARPE.

Opinion delivered July 12, 1909.

1. DEEDS—ESTATE ON CONDITION—FORFEITURE.—At common law the only method whereby a forfeitur . could be effected for breach of a condition subsequent was by re-entry upon the premises or by a public attempt to re-enter with a declaration of forfeiture. (Page 410.)

2. SAME—BREACH OF CONDITION—ASSIGNMENT OF RIGHT OF RE-ENTRY.—At common law the right of re-entry upon land for condition broken was not assignable, and could be exercised only by the grantor who created the condition or by his privies in blood. (Page 411.)

3. SAME—BREACH OF CONDITION—CONVEYANCE OF RIGHT OF RE-ENTRY.— Under Kirby's Digest, § 736, providing that "any person claiming title to any real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest in the same manner and with like effect as if he was in the actual possession thereof," *held* that where a deed conveyed land upon condition that the grantee should build and complete a railroad within three years from the date thereof, and the condition was never performed, the grantor could effect a forfeiture of such condition (conceding that it was a condition subsequent) by merely conveying it to another after condition broken. (Page 411.)

Appeal from Phillips Circuit Court; *Hance N. Hutton,* Judge; reversed.

*John I. Moore,* for appellant.

1. The condition in the deed was subsequent and not precedent, and there only remained to the grantor a right of entry upon the breach which cannot be assigned to a third party, and a conveyance to a third party cannot work a forfeiture. 145 Fed. Rep. 296, 301; 97 U. S. 693; Tiffany, Mod. Law, Real Prop. § 75; Warvelle, Real Property, 51; Goodwin, Real Property, 39; 21 Wall. 63; 33 Fed. Rep. 693; 50 Ark. 141.

*Rose, Hemingway, Cantrell & Loughborough,* for appellees.

1. The condition is precedent, and, the railroad never having been built, the estate never vested. 3 Ark. 259; 26 *Id.* 628; 72 *Id.* 310; 50 *Id.* 141; 145 Fed. 296; 2 Washb. Real Prop. (4th Ed.), 6; Greenleaf's Cruise on Real Prop. tit. 32, c. 25, § 10.

2. The right to take advantage of condition broken passed to the assignees of the grantor. Kirby's Dig., § 736; 14 Ark. 493; 17 *Id.* 608, 672; 66 *Id.* 193; 1 Pet. 503; 44 Ark. 153; 16 Pa.

St. (4 Harris) 146; 67 N. J. L. 288; 51 Atl. 781; 56 S. W. 367; 1 Nev. 40, 55; 7 Mo. App. 429; 77 N. W. 530; 37 S. W. 485; 9 Bush, 211; 5 Pick. 528; 10 *Id.* 206; 21 *Id.* 215; 147 Fed. 938; 152 U. S. 453.

3. All lands in this State are declared allodial, and feudal tenures are abolished. Const. Ark., 1868, art. 1, § 24; art. 2, § 28. In all States where livery of seisin is not necessary to convey an estate, a subsequent deed is an act equivalent to an entry. 152 U. S. 453.

4. Ejectment may be maintained without an actual re-entry. This is universally admitted. 1 Tiffany, Real Property, p. 74.

5. The court had no jurisdiction to order a sale of lands in another State. Wharton, Confl. Laws. § 272 *et sea.:* 47 Ark. 254. The sale was never reported nor confirmed. 23 Ark. 39; 55 *Id.* 307; 53 *Id.* 445; 59 *Id.* 5.

*John B. Jones, amicus curial.*

1. The condition is precedent, and no title ever vested. 1 Jones, Real Prop. & Conv., § 656; 26 Ark. 617; 4 Kent, Com. § 125; 72 Ark. 310.

2. Re-entry is not necessary upon wild lands, even if the condition was subsequent. Livery of seisin never prevailed in this State. 15 Ark. 585; Const. 1868, art. 11, § 28; Const. 1874, art. 1, § 24. Hence no re-entry required. 14 Johns. 406; 15 Pick. 189; 8 Cr. (U. S.) 8, 9; 2 Cruise, Dig., p. 37; § 37; *Ib.* § 38; 2 Washb. Real. Pr. (3d Ed.), p. 13, § 16; 8 Allen (Mass.), 598; 134 Mass. 82; 152 U. S. 152. A subsequent conveyance declares a forfeiture. 44 Ark. 153.

*Julian Laughlin* and *Murphy, Coleman & Lewis, amici curiae.*

1. The condition in the deed is a condition subsequent. 42 Ark. 347; 50 *Id.* 141; 28 *Id.* 54; 77 *Id.* 168.

2. Right to enter for breach of condition subsequent is not assignable. 1 Jones, Real Prop. § 728; Tiffany, Real Prop. § 75; Warvelle, Real Prop. 51; Goodwin, Real Prop. 38; 97 U. S. 696; 21 Wall. 63; 16 *Id.* 230; 106 U. S. 368; 139 *Id.* 676; 6 Fed. 653; 12 Allen (Mass.), 144; 26 N. J. L. 21; 65 So. C. 256; 48 N. Y. S. 363; 12 Barb. 460; 20 Ga. 563; 31 Conn. 478; 129 Ind. 244; 63

Ill. 204; 159 *Id.* 215; 34 Me. 324; 40 N. H. 222; 79 Hun 488; 130 N. C. 8; 87 Ala. 641; 14 Kan. 581; 26 N. J. 21; 21 Mo. 282; 53 Mo. 411; 94 *Id.* 465; 16 Gray (Mass.), 316; 16 Wall. 230; 97 U. S. 696; 106 *Id.* 360.

3. Kirby's Dig., § 736, does not change the common-law rule. 50 Ark. 141, 150. The right to re-enter is not title, nor an estate nor interest in land. 2 Wash. on Real Prop. § 954; Goodwin, Real Prop. 39; 12 N. Y. 132.

4. To forfeit an estate upon condition, there must be re-entry or its equivalent. 97 U. S. 696; 21 Wall. 53, 63; 114 N. W. 459; 55 N. E. 224; 98 Fed. 281; 42 Ark. 349; 2 Minor's Inst. 362; 147 Fed. 937-8; 145 Fed. 296.

McCULLOCH, C. J. This action was instituted by plaintiffs, Alberta J. Sharpe and Augustine Boice, against J. R. B. Moore in the circuit court of Phillips County to recover possession of forty acres of land situated in that county. The plaintiffs recovered judgment below, and the defendant appealed.

Each party deraigns title from the same source, viz., from Edmund McGehee, who owned the land at the time of his death during the year 1865 under a patent from the State of Arkansas. The plaintiffs claim title to the land under a deed executed in 1881 by the widow and devisees of Edmund McGehee. The defendant claims title under a deed executed in 1873 by the executors, including the widow, of Edmund McGehee, to the St. Louis & Memphis Railroad Company. This deed purported to convey a large body of land, including the tract in controversy, all of which was wild, timbered land; without any clearing or habitation on it. The will of Edmund McGehee conferred no power upon the executors to execute the deed, and it was executed pursuant to an order of a Mississippi court, and no order was made by the Arkansas probate court. It is conceded that on this account the deed was ineffectual as a conveyance of the testator's title, and conveyed nothing except the undivided interest of the widow as one of the devisees under the will. The deed was executed on the condition, expressed therein, that the grantee should build and complete a railroad within three years from the date thereof. Whether this was a condition precedent or subsequent we need not now decide, since, conceding it to have been a condition subsequent, which is essential to the strength

of defendant's claim of title under the deed, the conclusion we have reached on another controlling question is adverse to the defendant.

The condition of the deed, treating it as a condition subsequent, was not performed. No considerable amount of work in building the railroad was done, and after the condition was broken the grantor, without re-entering upon the land or by any other overt act declaring a forfeiture, subsequently executed the deed under which plaintiffs claim title. The question we propose to decide is, then, whether or not re-entry upon the land, suit or declaration of forfeiture by the grantor before conveying the land to a third party, was essential in order to effect a forfeiture, and whether any interest or estate was conveyed by the subsequent deed under which the plaintiffs claim title. We pretermit a discussion of the numerous other questions presented and argued in the case.

The doctrine of estates upon condition is of feudal origin, of which system the doctrine of title by livery of seisin formed an essential part, on account of the condition of real property at that time, and the only practical method of conveying it. This was then a doctrine of necessity, for in that day no system of registration of conveyances existed. Indeed, lands were not generally conveyed by writings, and the only practical method of giving notice of a change of title was either by actual delivery of possession or by symbolic delivery in sight of the land.

At common law, the only method whereby a forfeiture could be effected for breach of condition was by re-entry upon the premises or by a public attempt to re-enter, with a declaration of forfeiture. This, too, grew out of the doctrine of livery of seisin, the reason being that the forfeiture for condition broken must be accomplished by acts of equal dignity and notoriety with those which created the condition, viz., delivery, either actual or symbolic. "As by the old common law a freehold could be created only by the ceremony of livery of seisin, the corresponding ceremony of re-entry was necessary in order to determine it, or, as Coke has it, 'an estate of freehold cannot begin nor end without ceremony.'" (1 Jones on Conveyancing in Real Property, § 715.) "The entry, moreover, in the language of the Touchstone, should be 'an open and notorious act, equivalent to investiture of land by

livery of seisin, that notoriety might be given to the change of title.' It is not necessary, however, that the party entering should declare at the time for what purpose he enters. The act speaks for itself." (*Ib.* § 716.)

In his recent work on Real Property, Professor Minor (vol. 1, p. 532), says: "It is an established rule of the common law that if the conditional estate be a freehold the mere occurrence of the event which constitutes the violation of the condition does not defeat the estate, because as a freehold can, at common law, only be created by livery of seisin, there is needed a corresponding notoriety in order to determine it. This corresponding notoriety is the re-entry of the grantor or his heirs. * * * No actual re-entry is necessary to determine an estate for years on condition, 'for, as a term of years may begin without ceremony, so it may end without ceremony'."

It also must be conceded that at common law the right of re-entry for condition broken was not assignable, and could only be exercised by the grantor who created the condition, or by his privies in blood. It could not be exercised by one who was only the grantor's privy in estate. This under the maxim that, in order to discourage maintenance, "nothing which lies in action, entry. or re-entry can be granted." The same rule prohibited the conveyance of lands held adversely, or any interest therein. This rule was created under the English statute (32 Henry VIII, chap. 9) against selling pretended titles, and Sir Edward Coke states the reason therefor as follows: "To prevent maintenance, suppression of right, and stirring up of suits; and therefore nothing in action, entry or re-entry can be granted over; for under color thereof pretended titles might be granted to great men whereby right might be trodden down and the weak oppressed, which the common law forbiddeth." Coke on Littleton, 214a.

In many of the States of the American Union this English statute against the sale of pretended titles to lands not in possession has been re-enacted, and in a few States the doctrine has been recognized and enforced as a part of the common law. But this court in *Lytle* v. *State*, 17 Ark. 674, held that "the provisions of these statutes, upon which so much of the law of maintenance and champerty rests for support in the English law, so far from having been re-enacted in this State, have been met here by

directly conflicting legislation in the several provisions touching the sale of real estate held in adverse possession; whereby the right of 'alienation and purchase' of every interest, title and estate therein has been enlarged almost to an unlimited extent.' "

This rule has long since been changed in England by statute. By the Wills Act of 1837 (1 Victoria, c. 26, § 3), all rights of entry for condition broken were made devisable, and in 1844 another statute (7 & 8 Victoria, c. 76, § 5) made them assignable. At common law there was a distinctive reason for the rule of inhibition against the assignment of a grantor's rights before and after breach of condition. Judge Hare in his note to Dumpor's Case (1 Smith's Leading Cases, p. 112) says: "When it is said, in general terms, that a condition cannot be taken advantage of, save by the grantor and his heirs, and, of course, that it is not assignable, two very distinct points of law, resting on different reasons, are involved in the assertion. Before breach the reason why an assignee cannot take advantage of a condition really depends upon the want of capacity for transfer of the condition itself. But after breach the condition itself is gone, and there arises in its stead, whatever may be its term, in the case of freehold estates, at all events when created by a common-law conveyance, a right or title of entry, which is as little capable of assignment as the condition, although the obstacles to its assignment are of a different nature, arising out of the policy of the common law, and the provisions of the statute of maintenance, which forbade the sale or transfer of all claims or demands unsustained by possession and resting solely in entry or action."

However, the same learned author states his opinion to be that the abrogation of the rule or statute against maintenance does not alter the rule as to the non-assignability of the grantor's right before re-entry. On that subject he says: "It does not necessarily follow that the right to enforce the forfeiture of a condition is equally susceptible of assignment. The right to enter for a breach of condition is a bare right or remedy, which differs essentially from the right to clothe the title to land with possession by expelling a disseisor or intruder, for, while the right of property and right of possession belong in the one case to the person who enters, they are vested in the other in him on whom the entry is made, and continue in full force, although

liable to be defeated down to the last moment before that at which the grantor enters."

The contrary view was expressed by the New Jersey Court of Errors and Appeals in a learned and exhaustive opinion in which all judges concurred. *Bouvier* v. *Baltimore & N. Y. Ry. Co.,* 67 N. J. L. 281. In the opinion in that case it was said: "A distinction not always clearly made should, however, be borne in mind. Before breach, as in case of any determinable fee, there is in the grantor only a possibility of reverter. 4 Kent, Com. 111; *Nicoll* v. *N. Y. & E. Rd. Co.,* 12 N. Y. 121. After breach there is a vested right." At another place in the opinion, after referring to the statute of that State declaring the assignability of estates in expectancy, it is said: "It is suggested also that the proviso in the act that no chose in action shall thereby be made assignable at law excepts rights of entry after breach from its operation; but I do not take that view. Some judges have spoken of the right after breach as a mere chose in action, but the designation is inaccurate. A right of entry is an interest in land. * * * But, although it may be that the statute only authorizes a transfer before breach, I think a transfer after breach is also valid, for the reason that moved the Supreme Court of Pennsylvania to a like decision. I would not say, as did that court, that a right of entry can be levied on and sold at execution, but I think that in this State it may be transferred at the will of the holder."

The Pennsylvania Supreme Court in *McKissick* v. *Pickle,* 16 Pa. St. 140, where, under a deed which created a condition subsequent and wherein the grantor reserved for himself, his heirs and assigns, the right of re-entry, the question was whether or not a purchaser of the grantor's interest at execution sale could exercise the right, the court said: "The law against maintenance has never been adopted in this State. The reason assigned why a condition in England could not be assigned is, because no title could be made to land held by another adversely, as that was against the law, which forbids maintenance. And hence the rule that none but the grantor or his heirs can enter for condition broken. This reason does not apply here, where the grantor expressly reserves the right (citing authorities). In the last case Chief Justice Gibson says, none but the feoffer or his heirs can enter; and the reason why a right of entry cannot be assigned

is that a contrary doctrine would favor maintenance and promote litigation. This is a fair case for the application of the maxim, *cessante ratione cessat ipse lex.*"

We perceive no distinction by reason of the grantor having expressly reserved the right of re-entry to his assignee.

The common-law doctrine of livery of seisin and the law against maintenance or the sale of pretended titles have never found lodgment in this State. The former is contrary to our whole scheme of laws, and especially the system of registration of land titles which has existed in this State from the beginning. Before the statute was passed (December 9, 1837) putting in force in this State the common law of England so far as applicable to our form of government, the following statute was passed, which undoubtedly worked an entire change and swept away every vestige of the feudal doctrine concerning alienation of real estate and interests therein:

"Any person claiming title to any real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest in the same manner and with like effect as if he was in the actual possession thereof.

"The term 'real estate,' as used in this act, shall be construed as co-extensive in meaning with 'lands, tenements and hereditaments,' and as embracing all chattels real." (Secs. 736, 737, Kirby's Digest.)

Of this statute the court, in *Cloyes* v. *Beebe,* 14 Ark. 489, said: "It is true that at common law, if a man had in him only the right of possession or property, he could not convey it to another, lest, in the language of the ancient law, 'pretended titles might be granted to great men, whereby justice might be trodden down and the weak oppressed.' But this was for the feudal reason that possession was an indispensable element of alienation. * * * But every vestige of this feudal doctrine, which thus restrained the alienation of real estate, has been swept off by our statute, which enacts that 'any person claiming title to any real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest in the same manner and with like effect as if he was in the actual possession thereof.' "

It is insisted by learned counsel for appellant that the statute accomplished no more than an abrogation of the rule against main-

tenance, and that, nothwithstanding the statute, the title does not revert to the grantor nor his heirs until after re-entry, and that without entry neither he nor they have anything to convey.

Conceding, as they contend, that the statute only abrogates the rule against maintenance, that, in our opinion, is sufficient. For we conceive the rule stated by the New Jersey and Pennsylvania courts to be correct, that, after condition broken, the grantor or his heirs have a vested right or interest which is assignable. But the statute accomplishes more than a mere abrogation of the rule against maintenance. It declares that the grantor, notwithstanding an adverse possession, may sell his interest in the real estate, and gives the broadest definition to the term "real estate." Of this part of the statute our court has said, quoting from Sir Edward Coke, that the word hereditaments "is by far the largest and most comprehensive expression, because it included not only lands and tenements, but whatever may be inherited, be it corporeal or incorporeal, real, personal or mixed." Proceeding further, the court said: "And thus it appears that, although at common law there were certain rights to and interests in real estate that for want of possession, either actual or constructive, could not be alienated to a stranger, although they could be released or devised by will, or would pass to the heir or executor—as contingencies and mere possibilities—such is the comprehensiveness of our statute in embracing hereditaments in the term 'real estate' that that distinction is also annihiliated, and therefore, in this State, whatever interest in real estate may be inherited may be bargained, sold or conveyed." *Cloyes* v. *Beebe,* 14 Ark. 489.

There is very little conflict, if any, among the text writers and lexicographers as to the meaning of the word "hereditaments." It is "anything that may be inherited, be it corporeal or incorporeal, real, personal or mixed. The word is almost as comprehensive as property." Anderson's Law Dictionary; 1 Coke, Inst. 6; 3 Kent, Comm. 401.

"Whatsoever may be inherited is an hereditament. In other words, when a right is of such a nature that on the death of its owner intestate it descends to his heir, it is an hereditatment. The term includes a few rights unconnected with land, but it is generally used as the widest expression for real property of all kinds." Rapalje & Lawrence, Law Dictionary.

We do not deem it necessary, however, to resort to any technical meaning of the word hereditaments, for it is obvious that the Legislature, by the first section quoted above, intended to make interests of every kind whatever in lands alienable. This court has placed the same construction on the statute in another class of cases, not differing, we think, in principle from the present case. *Bagley* v. *Fletcher,* 44 Ark. 153. In that case the question was as to the right of a minor to disaffirm by the execution of a quitclaim deed, without having re-entered or manifested a disaffirmance by any other overt act. The court held that the infant's deed vested in the grantee a defeasible estate in fee, subject to be defeated by disaffirmance, and that the execution of the quitclaim deed was effectual for the purpose of conveying the minor's interest, and was of such a hostile character to the original deed as amounted to a revocation of the former grant. That decision was rendered by a divided court, but there was no disagreement among the judges on the point which is pertinent here. Judge Eakin, dissenting, conceded that a deed with covenants of warranty, executed by a quondam infant, would operate as a disaffirmance and revocation of the former deed; but he held that a similar effect should not be given to a quitclaim deed. In his dissenting opinion he said: "In other States, as here, where lands adversely held may be transferred by the owners, the entry is dispensed with as an overt and solemn act of disaffirmance, and the deed, if incompatible with any supposed recognition of the outstanding title, is taken as a manifestation of an intention to do what would, under the common law, have been actually necessary."

The decision in *Bagley* v. *Fletcher* was recently followed in the case of *Beauchamp* v. *Bertig,* 90 Ark. 351, where the land conveyed by the minor was held adversely by his original grantee.

So it may be said here with equal force, as in the case just cited, that the grantor in a conditional deed, by the execution of another deed to a third person after breach of the condition, manifests in the most unmistakable manner his intention of declaring a forfeiture. It is equivalent to an actual re-entry or a declaration of forfeiture. The execution of his subsequent deed, being in hostility to his former grant, necessarily works a forfeiture. The execution and registration of the deed is an act of the

highest degree of hostility, and one which the original grantee on condition must take notice of, because it in the line of his title. The statement of a condition in the deed puts the grantee and those in privity with him on notice as to any subsequent deed executed by the grantor in hostility to the title thereby conveyed.

The Virginia statute (Code 1904, § 2418) declares that "any interest in or claim to real estate may be disposed of by deed or will." It was held under this provision that a right of action for land in the adverse possession of another, or a right of entry thereon after conditions broken, by analogy to contingent remainders and conditional limitations, which are also mere possibilities, may be assigned by deed or will. *Carrington* v. *Goddin,* 13 Gratt. 587; *Young* v. *Young,* 89 Va. 675; *Wilson* v. *Langhorne,* 102 Va. 639, 47 N. E. 872.

In *Wilson* v. *Langhorne,* 102 Va. 640, the court, referring to a former decision construing the statute, said: "The court in tnat case indulges in no refinement of construction. It is content to give plain words their usual and every day meaning, and the interpretation there placed upon the statute did away forevei with the niceties by which the devolution of property had theretofore been embarrassed and hindered, and made capable of disposition by deed or will any interest in or claim to real estate."

Kentucky has a statute identical in language with the Virginia statute, and the Court of Appeals of Kentucky in construing it said: "The effect of this statute is to obviate at once all the difficulties growing out of the distinction, which had been established by judicial construction, between such estates as were alienable and such as were not. It will not be doubted, we suppose, that under this statute every conceivable interest in or claim to real estate, whether present or future, vested or contingent, and however acquired, may be disposed of by will or deed." *Nutter* v. *Russell,* 3 Metcalfe, 163. In *Kenner* v. *American Cont. Co.,* 9 Bush 202, the Kentucky court held that the right to enter for condition broken could be devised.

The Supreme Court of the United States in *Schlesinger* v. *Kansas City S. Ry. Co.,* 152 U. S. 453, said: "In the case of a private grant entry by the grantor or any act equivalent thereto, showing a purpose to take advantage of the breach of condition subsequent and to reclaim the estate forfeited by such breach, is

all that is required." In that case the forfeiture was declared in a subsequent conveyance to another grantee, and the court said that the grantor had manifested his intention to forfeit the former grant.

Reliance is placed by learned counsel on the New York cases, principally *Uppington* v. *Corrigan,* 79 Hun 488, a decision by the Appellate Division of the Supreme Court of that State. That decision leaves out of account the distinction between the rights of a grantor before and after condition broken. But in that case (which was one concerning the effect of a devise of lands previously granted away by deed on condition subsequent) the devise was made before breach of the condition. The effect of that decision was merely to hold that before condition broken the grantor had no interest which could be devised by will.

We think it clear, both upon reason and authority, that where, as in this State, the common-law doctrine of livery of seisin is abolished by a statute authorizing a conveyance of land, whether held in possession or not, a subsequent deed executed by an original grantor on condition is equivalent to re-entry, and is effectual for the purpose of declaring a forfeiture and vesting the title in the subsequent grantee. A hostile deed after condition broken serves to divest the defeasible title out of the grantee on condition and to convey the title. This is, as said by the Pennsylvania court, a proper application of the maxim that, the reason of the law ceasing, the law itself ceased.

The judgment of the circuit court is therefore affirmed.

HART, J., (dissenting). I dissent in this case. For the reason that a dissenting opinion is of little or no practical value, I shall not attempt an exhaustive discussion and review of the numerous adjudicated cases bearing upon the principles involved in the action. Suffice it to say that I have read and considered the cases cited by the able attorneys who have filed briefs in behalf of all parties interested in the decision, and their briefs, as I believe, exhaust the subject.

The opinion of the court does not decide whether the condition in the deed in question is precedent or subsequent. I think it a condition subsequent. It is necessary for me to state my conclusion on this point. If I thought it was a condition precedent, I would concur in the judgment, and not dissent.

"Conditions precedent are, as the term implies, such as must happen before the estate dependent upon them can arise or be enlarged, while conditions subsequent are such as, when they do happen, defeat an estate already vested." *Cooper* v. *Green,* 28 Ark. 54. This is but a reiteration of the rule announced by Washburn, Blackstone and Coke. It will be borne in mind that the opinion of the court has treated the condition in the deed as a condition subsequent. That is to hold that the estate was vested in the railway company by the execution of the deed. It is a rule of the common law that none may take advantage of a condition but grantors and their privies in blood, or, in the case of corporations, their successors. The right to forfeit an estate for breach of condition subsequent is confined to the grantor and his heirs, and cannot be transferred by alienation. Am. Dig. (Cent. Ed.) vol. 4, 1142. Note case of *Cross* v. *Carson,* 44 Am. Dec. 742; authorities cited in the brief of Murphy, Coleman & Lewis, *amici curiae.* This proposition has been so long established both by the text writers and by adjudicated cases that there is no quarrel or dispute between my brother judges and myself as to it. They have decided that this rule has been changed by our statute, and that our former decisions have recognized the change. I maintain the contrary view. They declare that sections 736 and 737 change the common law rule.

Sec. 736 reads as follows: "Any person claiming title to any real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest in the same manner and with like effect as if he were in possession thereof."

At common law the owner of land could not convey it unless it was in his possession. To obviate this difficulty, the statute in question was passed. The statute simply means that, if A. and B both claim title to land, and B is in possession thereof, A may convey his claim of title; and his grantee may bring suit to recover the land. I think that was the only issue involved in the case of *Cloyes* v. *Beebe,* 14 Ark. 493, cited by the court to maintain its position that the statute has changed the rule of the common law on the subject. I think the court has confused the right of entry or bringing suit for possession of one who has been unlawfully dispossessed of his real estate with the right of entry or taking advantage of a condition in a deed which has been broken.

The statute was enacted for the purpose of enabling the claimant of real estate, who has been unlawfully deprived of his possession, to convey it. It is essentially different from the right to take advantage of a forfeiture or breach of a condition. In the latter case the title is vested in the grantee, and the grantor has no claim or title, but only the right to claim a forfeiture or breach of condition. This is not a claim of title, but only a right or personal privilege which the grantor may either waive or assert.

As we have already seen, by the rules of the common law, in a condition subsequent the title vested in the grantee by the execution of the deed. This is the difference between a condition precedent and a condition subsequent. See *Cooper* v. *Green, supra.* It is plain that, if the title is vested by the execution of the deed, it must be revested in the grantor in some way before he can be one "claiming title," as expressed in sections 736 and 737 of Kirby's Digest, *supra.* If I am correct in the views I have expressed, the case of *Lytle* v. *State,* 17 Ark. 608, only holds that the common-law doctrine of maintenance is not in force in this State, as applied to the case of one "claiming title to any real estate," and that such person may convey whatever title thereto he may possess.

I think a careful reading of the opinion in this case will show that this was the only issue raised by the pleadings and the evidence, and, if so, it is all that was decided. Section 737 reads as follows: "The term 'real estate,' as used in this act, shall be construed as co-extensive in meaning with 'lands, tenements and hereditaments,' and as embracing all chattels real."

Obviously, this refers to the preceding section, and, if my construction of the preceding section is right, section 737 only means that one claiming title to a hereditament which is held adversely by another may convey it. In short, if section 736 has no reference to a conveyance of right to re-enter or take advantage of a breach of a condition, the word "hereditament," as used in section 737, has no reference thereto. The difference between a right of entry of one unlawfully dispossessed of his real estate and the right of entry for breach of condition is clearly explained in the case of *Bangor* v. *Warren,* 34 Me. 324, and the distinction is recognized in the case of *Hooper* v. *Cummings,* 45 Me. 359.

In the State of New Jersey, previously to the passage of the act of March 14, 1851, a right to enter for a condition broken was

not assignable, and the condition of a deed could only be taken advantage of by a party to the deed, or by his privies in blood, or his personal representatives. The case of *Southard* v. *Railroad Co., 2* Dutcher (N. J.) 13, holds that it takes an express statutory enactment to make so important a change in the common law.

The court has sought to strengthen its opinion by citing the case of *Bagley* v. *Fletcher,* 44 Ark. 153, and *Beauchamp* v. *Bertig,* 90 Ark. 351, to the effect that a deed executed by an infant may be avoided by him after becoming of age by any act unequivocally manifesting an intention to avoid it, and that a reconveyance to a third person constituted such an act. I can see no analogy between the two questions. Nothing is said in the cases mentioned about the doctrine of re-entry, or the assignability of a right to re-enter. It is well settled at common law that a conveyance by the grantor of his right to avail himself of a breach of a condition in a deed operates as a discharge of the condition. Such conveyance constitutes a waiver of the condition by the grantor, and does not transfer it to his grantee. There is no room for dispute about the common law on the subject. The sole question is, has the statute changed it? It is conceded that the Legislature has the power to change the rule. If it has done so, that settles the matter. If it has not, courts have no right to encroach upon the common law, for this would be judicial legislation.

To continue the discussion would be fruitless. As above stated, my only purpose is to enter my protest against what I conceive to be a marked encroachment by the judiciary upon a long established and well defined rule of the common law.

In 1816, while Arkansas was a part of the Missouri Territory, a statute was passed adopting and recognizing the common law as a part of its system of laws. This statute remained to govern the subsequently formed Territory of Arkansas, and, with some changes of phraseology, was re-enacted as a part of the laws of this State, and remains in our statutes today. *Horsley* v. *Hilburn,* 44 Ark. 458; Kirby's Digest, § 623.